JOHN KNODLE, individually and as the Administrator of the Estate of Linda Kay Knodle, Plaintiff-Appellant, *v.* WAIKIKI GATEWAY HOTEL, INC., HYATT CORPORATION, CONTINENTAL AIR LINES, INC., NORTHRIDGE INDUSTRIES, INC., CONTINENTAL-KALAKAUA HOTEL CORPORATION, and WAIKIKI GATEWAY HOTEL ASSOCIATES, Defendants-Appellees, and GEORGE PATRICK MURPHY, Defendant

NO. 9392

(CIV. NO. 50015)

SEPTEMBER 10, 1987

LUM, C.J., NAKAMURA, PADGETT, AND HAYASHI, JJ., AND INTERMEDIATE COURT OF APPEALS ASSOCIATE JUDGE TANAKA, IN PLACE OF WAKATSUKI, J., DISQUALIFIED

OPINION OF THE COURT BY NAKAMURA, J.

Linda Kay Knodle, a flight attendant then employed by Continental Air Lines, Inc., was murdered by George Patrick Murphy on November 26, 1974 in the Waikiki Gateway Hotel. John Knodle, her father, suing on his own behalf and as the administrator of her estate, brought a multi-count tort action in the Circuit Court of the First Circuit against Murphy, Continental Air Lines, and the hotel, its owners, and its operators. After default was entered against Murphy and summary judgment was awarded to Continental Air Lines,[1] the negligence claims against the remaining defendants were tried before a jury. The jury, on interrogatories propounded by the trial judge, returned a special verdict finding Waikiki Gateway Hotel Associates, Hyatt Corporation, Continental-Kalakaua Hotel Corp., and Northridge Industries, Inc., the hotel's owners and operators, each "had a duty to take reasonable measures to safeguard Linda Kay Knodle from the foreseeable criminal acts of third parties," but none of them "breached that duty." The plaintiff appeals from the judgment that followed, urging the trial judge erred by not permitting "evidence of all reported criminal activity at and near the hotel" to be admitted at trial, by improperly instructing the jury "on proximate causation and foreseeability," and by not granting "judgment notwithstanding the verdict or, at the least, a new trial."

We are satisfied from a careful review of the record that the trial judge's rulings on the admissibility of evidence of "reported criminal activity at and near the hotel" were correct. But after reading the court's instructions, we conclude the judge committed reversible error, as the plaintiff avers, in instructing the jury that "[a]n act is reasonably foreseeable if it appears to have been ordi-

---

[1]No error was raised on appeal with respect to the award of summary judgment to Continental Air Lines, Inc.

nary or usual under all the circumstances."[2] We are convinced the judge's charge to the jury did not provide "such explanation and instruction concerning the matter . . . submitted as [was] necessary to enable the jury to make its findings" in other respects too. Hawaii Rules of Civil Procedure (HRCP) 49(a).

## I.

### A.

Linda Knodle arrived in Honolulu on the fateful day at about 2:00 a.m. on a Continental Air Lines flight from Guam. She was not one of the attendants assigned to duty on the flight; she was "riding on a pass given by her employer and going back to Chicago" for the Thanksgiving holiday. Shortly after the plane landed, the two flight attendants who "worked" the flight left the airport in a taxicab to go to the Waikiki Gateway Hotel, where Continental's flight crews were housed during "layovers" in Honolulu. Linda Knodle could not leave with them because she was detained in Customs. She caught a ride later with several Continental pilots and reached the hotel shortly before 5:00 a.m.

When they arrived, the pilots carried Linda Knodle's bags into the lobby. She went to the front desk where she was greeted by the Assistant Manager and the Night Auditor, both of whom she knew from previous stays at the hotel. She then asked the Night Auditor to place a telephone call to the pilot who had been the Captain of the flight from Guam. After a half-hour conversation with the Captain, in which they talked about the possibility of having a party on his boat but decided not to, Ms. Knodle resumed her conversation with the two hotel employees. The pilots with whom she rode to the hotel were gone, having left earlier upon learning the Captain was reluctant to host a party.

Ms. Knodle then started to fill out a guest registration card. But before she finished, she asked the Assistant Manager about the two

---

[2]Since there was reversible error and the case will have to be retried, we do not reach the third issue raised by the plaintiff, whether the trial judge erred by not granting plaintiff's motion for a judgment notwithstanding the verdict or for a new trial.

attendants on the flight from Guam and the rooms they were occupying. Upon learning one was in a room with two beds, she asked for a key to the room, Room 1006. The Assistant Manager handed her a key to the tenth-floor room and tore up the registration card. Ms. Knodle then carried two pieces of her luggage to one of the hotel's three elevators and went back to fetch the remaining bags.

Meanwhile, George Murphy came into the lobby, walked to the elevators, and entered the one in which Ms. Knodle had placed her bags. The Assistant Manager saw this and yelled, "[h]old the elevator." Murphy held the door open while Ms. Knodle picked up the rest of her luggage and entered the elevator. The door then closed, and the elevator ascended to the upper floors. The two employees at the front desk resumed what they had been doing earlier.

At about 6:30 a.m., the Night Auditor was informed by a guest who was checking out that there was "some extra luggage [in] the elevator." The Auditor removed the bags from the elevator and took them to the front desk. When he examined the luggage tags, he realized the bags belonged to Ms. Knodle. He discussed the matter with the Assistant Manager, but they decided not to disturb her because they assumed she was asleep in her room.

A maintenance man who came to work at 7:00 a.m. found the key to a tenth-floor guest room later on in a fourth-floor hallway. He "noticed . . . the key didn't belong on that floor," asked the first guest he saw whether the guest had misplaced the key to his room, and "took the key downstairs to the clerk's counter" thereafter, telling the desk clerk "I found the key on the fourth floor."

Shortly after 9:00 a.m., Linda Knodle's body was discovered in a restroom adjoining the laundry room on the fourth floor. A guest came upon Ms. Knodle's inert form, assumed she was ill, and called the Manager, informing him that "someone is ill in the bathroom." The Manager responded to the call, but discovered she was dead. She had been strangled to death by George Patrick Murphy sometime between 5:15 a.m. and 9:00 a.m.

### B.

John Knodle filed suit on November 24, 1976, nearly two years after the lamentable occurrence. His first complaint named Mur-

phy, Waikiki Gateway Hotel, Inc. and John Does 1 through 20 as defendants and alleged, *inter alia,* that Murphy "brutally assaulted and murdered [Linda Kay Knodle] on the premises of the Waikiki Gateway Hotel" and Waikiki Gateway Hotel, Inc. and Does 1 through 5 did not "provide safe accommodations for . . . Linda Kay Knodle" and "adequate security to protect [her] from the unreasonable risk of physical harm." Continental Air Lines and the owners and operators of the hotel were identified subsequently as the originally unidentifiable defendants.

The plaintiff proceeded to trial against the hotel's owners and operators after conducting extensive discovery and twice amending his complaint. The claims tried were: "(1) That the defendants were negligent; and (2) That the defendants acted wantonly and with reckless disregard for the safety of Linda Knodle." The jury found the defendants had breached no duty owing to Linda Knodle, and John Knodle appeals from the judgment entered on the verdict returned by the jury.

## II.

Having found no merit in the plaintiff's assertion of error regarding the circuit court's evidentiary rulings at trial, we focus on the contention that the jury was improperly instructed "on proximate causation and foreseeability." We begin our examination of the issue with a review of HRCP 49(a), which governs when a trial court submits a case to a jury for "a special written finding upon each issue of fact."

## A.

When, as here, the trial court "require[s] a jury to return only a special verdict in the form of a special written finding upon each issue of fact," HRCP 49(a) compels the judge to "give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue."[3] As aptly put by the Intermediate Court of Ap-

---

[3]The rule reads:
   Special Verdicts. The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event the

peals, the judge should "explain the law of the case, . . . point out the essentials to be proved on one side or the other, and . . . bring into view the relation of the particular evidence adduced to the particular issues involved." *McKeague v. Talbert,* 3 Haw. App. 646, 657, 658 P.2d 898, 906 (1983) (citing 75 Am. Jur. 2d *Trial* § 573 (1974)); *see DiCenzo v. Izawa,* 68 Haw. ____, ____, 723 P.2d 171, 178 (1986); *Kaeo v. Davis,* 68 Haw. ____, ____, 719 P.2d 387, 394 (1986). And all this must be done "in such a manner that [the jury will] not be misled." *McKeague v. Talbert,* 3 Haw. App. at 657, 658 P.2d at 906. This is no simple task where the claims for damages "rest upon the negligence concept"; for there, "we find neither simplicity, crystallization of rule . . . , nor a process subject to high standardization." L. Green, *Rationale of Proximate Cause* 63-64 (1927).

### B.

The plaintiff posited theories of liability premised on allegations that the defendants negligently failed to provide "safe accommodations" and "adequate security to protect [Linda Knodle] from the unreasonable risk of physical harm" and this wanton and reckless disregard for her safety justified the assessment of punitive, as well as compensatory, damages against them.[4] Tersely stated, the elements of a cause of action founded on negligence are:

---

court may submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the several special findings which might properly be made under the pleadings and evidence; or it may use such other method of submitting the issues and requiring the written findings thereon as it deems most appropriate. The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict.

HRCP 49(a).

[4] The propriety of submitting the issue of whether or not punitive damages were assessable under the circumstances was not raised in this appeal.

1. A duty, or obligation, recognized by the law, requiring the [defendant] to conform to a certain standard of conduct, for the protection of others against unreasonable risks[;]

2. A failure on the [defendant's] part to conform to the standard required: a breach of the duty . . . [;]

3. A reasonably close causal connection between the conduct and the resulting injury. . . . [and]

4. Actual loss or damage resulting to the interests of another. . . .

W.P. Keeton, *Prosser and Keeton on the Law of Torts* § 30, at 164-65 (5th ed. 1984) (footnotes omitted); *see also Ono v. Applegate,* 62 Haw. 131, 137, 612 P.2d 533, 538-39 (1980).

The existence of a duty owed by the defendant to the plaintiff, "that is, 'whether . . . such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of the other — or, more simply, whether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant,' is entirely a question of law." *Bidar v. Amfac, Inc.,* 66 Haw. 547, 553, 669 P.2d 154, 158 (1983) (quoting W. Prosser, *Handbook of the Law of Torts* § 37, at 206 (4th ed. 1971)). Whether there was a breach of duty or not, i.e. whether there was a failure on the defendant's part to exercise reasonable care, is a question for the trier of fact. "For '[u]nder the prevailing rule duty . . . is bounded by the foreseeable range of danger,' and '[r]easonable foreseeability of harm is the very prototype of the question a jury must pass upon in particularizing the standard of conduct in the case before it.' " *Bidar v. Amfac, Inc.,* 66 Haw. at 552-53, 669 P.2d at 159 (quoting 2 F. Harper & F. James, *The Law of Torts* § 18.8, at 1059 (1956)). The presence of a reasonably close connection between the defendant's conduct and the plaintiff's injury, i.e. "[w]hether the breach of duty was more likely than not a substantial factor in causing the harm complained of is normally a question for the [jury too]." *Bidar v. Amfac, Inc.,* 66 Haw. at 553, 669 P.2d at 159 (citation omitted). And "it is the court's function to direct the jury as to what items [of damages] they may consider and the jury's function to determine which of such items were actually suffered." L. Green, *supra,* at 187. "[T]he proper amount of damages, [of course], is within the exclusive province of the jury, since [jurors] are the sole judges of all disputed questions of fact." *Dias v.*

*Vanek,* 67 Haw. 114, 117, 679 P.2d 133, 135 (1984) (citations omitted).

Thus, in the trial of a negligence action, apart from "directing the court's business in general, passing on the admissibility of evidence and the like, the judge has three well-defined major functions." L. Green, *supra,* at 66. He must decide whether "such a relation exists between the parties that the community [would] impose a legal obligation upon one for the benefit of the other," *Bidar v. Amfac, Inc.,* 66 Haw. at 552, 669 P.2d at 158; he must decide "on the whole evidence relating to a particular issue [of fact] whether more than one reasonable inference can be drawn, that is whether there is an issue for the jury's determination," L. Green, *supra,* at 67; and "[i]f both of the preceding functions have been exercised favorably for [the] plaintiff . . . , then the judge must submit the [factual] issues that may have been raised to the jury with such instructions as will enable the jury to deal with them intelligently." *Id.*

## C.       :

When the relation is a special one of innkeeper and guest, the former is under a duty to take reasonable action to protect the latter against unreasonable risk of physical harm. *See Restatement (Second) of Torts* § 314A (1965). The duty of an innkeeper or hotel operator to protect his guest "extends to [unreasonable] risks arising out of [his] own conduct, or the condition of his land or chattels." *Id.* comment d; *see Bidar v. Amfac, Inc.,* 66 Haw. at 552, 669 P.2d at 159. "It extends also to [unreasonable] risks arising from . . . the acts of third persons, whether they be innocent, negligent, intentional, or even criminal," *Restatement (Second) of Torts, supra,* comment d, though "[g]enerally, a defendant is not responsible for (that is, he has no duty to control) the behavior of a third person[.]" *Seibel v. City & County,* 61 Haw. 253, 257, 602 P.2d 532, 536 (1979). The existence of "a 'special relationship' between the defendant and either the third person who may threaten harm or the party who is the [potential] victim of the harm," however, gives the latter a right to protection from unreasonable risks arising from the acts of the third person. *Id.* (relying on *Restatement (Second) of Torts,*

*supra,* § 315);[5] *see also Wolsk v. State,* 68 Haw. ____, ____, 711 P.2d 1300, 1302 (1986); *cf. King v. Ilikai Properties, Inc.,* 2 Haw. App. 359, 362, 632 P.2d 657, 661 (1981) (A hotel does not owe a person who was assaulted on its premises but was not a guest a duty to protect her from the criminal acts of third parties. No special relationship existed under the circumstances.).

## D.

Whether the defendant had a duty to take reasonable action to protect the plaintiff from unreasonable risk of harm is, of course, a question for the judge. But what is reasonable and unreasonable and whether the defendant's conduct was reasonable in the circumstances are for the jury to decide. Put simply, perhaps simplistically, what is reasonable care on the part of the defendant is "what a reasonable and prudent person would . . . have done under [the] circumstances." *Wong v. City & County,* 66 Haw. 389, 394-95, 665 P.2d 157, 161 (1983) (quoting *Martin v. Wilson,* 23 Haw. 74, 88 (1915)).[6] "The conduct of [this mythical] person will vary with the situation with which he is confronted." W.P. Keeton, *supra,* § 32, at 175. For what is reasonable and prudent in the particular circumstances is marked out by the foreseeable range of danger. *Bidar v. Amfac, Inc.,* 66 Haw. at 552, 669 P.2d at 159.

Danger in this context "necessarily involves a recognizable danger, based upon some knowledge of the existing facts, and

---

[5]Section 315 of the *Restatement* reads:

There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

(b) a special relation exists between the actor and the other which gives to the other a right to protection.

[6]The courts have gone to unusual pains to emphasize the abstract and hypothetical character of this mythical person. He is not to be identified with any ordinary individual, who might occasionally do unreasonable things; he is a prudent and careful person, who is always up to standard. Nor is it proper to identify him with any member of the very jury which is to apply the standard; he is rather a personification of a community ideal of reasonable behavior, determined by the jury's social judgment.

W.P. Keeton, *supra,* § 32, at 175 (footnotes omitted).

some reasonable belief that harm may possibly follow." W.P. Keeton, *supra*, § 31, at 170 (footnote omitted). The test of what is reasonably foreseeable is not one of a balance of probabilities. "That the danger will more probably than otherwise not be encountered on a particular occasion does not dispense with the exercise of care." *Tullgren v. Amoskeag Manufacturing Co.*, 82 N.H. 268, 276, 133 A. 4, 8 (1926). The test is whether "there is some probability of harm sufficiently serious that [a reasonable and prudent person] would take precautions to avoid it." *Id.; see also Griggs v. Firestone Tire & Rubber Co.*, 513 F.2d 851, 859 (8th Cir.), *cert. denied*, 423 U.S. 865 (1975); *Moran v. Faberge, Inc.*, 273 Md. 538, 552-54, 332 A.2d 11, 20 (1975); *Bean v. Ross Manufacturing Co.*, 344 S.W.2d 18, 25 (Mo. 1961). "As the gravity of the possible harm increases, the apparent likelihood of its occurrence need be correspondingly less to generate a duty of precaution." W.P. Keeton, *supra*, § 31, at 171 (footnote omitted).[7] And "[a]gainst this probability, and gravity, of the risk, must be balanced in every case the utility of the type of conduct in question." *Id.* Thus, the judge's task of imparting what may be reasonable care or the converse to enable the jury to decide if a breach of duty occurred is, to say the least, difficult.[8]

---

[7]For example,

[t]he odds may be a thousand to one that no train will arrive at the very moment that an automobile is crossing a railway track, but the risk of death is nevertheless sufficiently serious to require the driver to look for the train and the train to signal its approach. It may be highly improbable that lightning will strike at any given place or time; but the possibility is there, and it may require precautions for the protection of inflammables.

W.P. Keeton, *supra*, § 31, at 171 (footnotes omitted).

[8]Keeton describes the difficulty in these terms:

It thus is fundamental that the standard of conduct which is the basis of the law of negligence is usually determined upon a risk-benefit form of analysis: by balancing the risk, in the light of the social value of the interest threatened, and the probability and extent of the harm, against the value of the interest which the actor is seeking to protect, and the expedience of the course pursued. For this reason, it is usually very difficult, and often simply not possible, to reduce negligence to any definite rules; it is "relative to the need and the occasion," and conduct which would be proper under some circumstances becomes negligence under others.

W.P. Keeton, *supra*, § 31, at 173 (footnotes omitted).

### E.

Inasmuch as causal relation is one of fact, "[i]t is [a question] for the jury, *except* when the facts are such that they will support only one reasonable inference." L. Green, *supra*, at 132 (emphasis in original). Explaining when the law deems that there is a reasonably close connection between the defendant's conduct and the plaintiff's injury as to render the defendant accountable for his conduct can be as formidable a task as the preceding one.[9] The difficulty may be enhanced if a third person's misconduct can be said to be an active cause of the harm.

"Proximate cause," the term employed by many courts to characterize this legally sufficient causal relation, is "in itself an unfortunate term." W.P. Keeton, *supra*, § 41, at 264. It might have been apt in an earlier time; but in the complex society of the late twentieth century, a negligent tort is as likely as not to have plural or concurring causes. And it is not only the "next" or "nearest" cause that the law considers close enough to make a defendant responsible for the injury suffered by the plaintiff.

Some courts stepping away from literal "proximate causation" adopted a "but for" rule. Thereunder, "[t]he defendant's conduct is a cause of the event if the event would not have occurred but for that conduct; conversely, the defendant's conduct is not a cause of the event, if the event would have occurred without it." *Id.* at 266 (footnote omitted). The test serves to explain culpable causation in most cases. *Id.* "The problem with the 'but for' test is that it may not cover the situation where two or more causes [can be perceived yet] none of them alone would have produced the result[ing harm]." 1 J. Dooley, *Modern Tort Law* § 8.02, at 227 (1982) (footnote omitted).

The inadequacies in earlier rules or tests for determining the necessary causal connection led to a "formulation [emphasizing] legal significance rather than factual quantum." W.P. Keeton,

---

[9]As Keeton says:

There is perhaps nothing in the entire field of law which has called forth more disagreement, or upon which the opinions are in such a welter of confusion. Nor, despite the manifold attempts which have been made to clarify the subject, is there yet any general agreement as to the best approach.

W.P. Keeton, *supra*, § 41, at 263 (footnote omitted).

*supra*, § 41, at 267 (footnote omitted). Under the guidelines developed by the American Law Institute (A.L.I.) in its *Restatement of Torts*, "[t]he actor's negligent conduct is a legal cause of harm to another if (a) his conduct is a substantial factor in bringing about the harm . . . ." *Restatement (Second) of Torts, supra*, § 431. Finding this measure of blameworthiness was "[t]he best definition and the most workable test of proximate or legal cause so far suggested," we adopted it in *Mitchell v. Branch*, 45 Haw. 128, 132, 363 P.2d 969, 973 (1961). In affirming a judgment in favor of the plaintiff, we said the defendant's negligence "need not have been the whole cause or the only factor [in bringing about the harm]. It was enough that his negligence was a substantial factor in causing plaintiff's injuries." *Id.* (citation omitted).[10]

The A.L.I. formula is not without critics; it has been criticized as not going far enough and being too general. But we are convinced "that 'substantial factor' is a phrase sufficiently intelligible to furnish an adequate guide in instructions to the jury, and that it is neither possible nor desirable to reduce it to any lower terms." W.P. Keeton, *supra*, § 41, at 267. "Substantial factor in bringing about the harm," therefore, is still the touchstone when the issue of causal relation must be submitted to the jury. *See Bidar v. Amfac, Inc.*, 66 Haw. at 553, 669 P.2d at 159; *McKenna v. Volkswagenwerk Aktiengesellschaft*, 57 Haw. 460, 464, 558 P.2d 1018, 1022 (1977).

### III.

The plaintiff in this case argues "[t]he trial court's instruction to the jury on proximate causation and foreseeability was improper." Considering the judge's charge to the jury as a whole, as we must, *see Agee v. Kahului Trucking & Storage, Inc.*, 67 Haw. 365, 369, 688

---

[10]The formulation we cited was from the A.L.I.'s first restatement of the law of torts. *Restatement (Second) of Torts* § 431, however, reiterates section 431 of the original compilation; the pertinent section reads:
What Constitutes Legal Cause
The actor's negligent conduct is a legal cause of harm to another if
(a) his conduct is a substantial factor in bringing about the harm, and
(b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm.
*Restatement (Second) of Torts, supra*, § 431.

P.2d 256, 259 (1984); *Adair v. Hustace,* 64 Haw. 314, 324, 640 P.2d 294, 302 (1982); *State v. Pioneer Mill Co.,* 64 Haw. 168, 180, 637 P.2d 1131, 1140 (1981), we conclude he erred, as plaintiff avers. Inasmuch as "[e]rroneous instructions are presumptively harmful," *Turner v. Willis,* 59 Haw. 319, 326, 582 P.2d 710, 715 (1978) (citations omitted), and we cannot say the error was harmless, we are compelled to vacate the judgment. Though the claim of error here is centered on an instruction in which the judge explained "superseding cause" and "reasonably foreseeable risk of criminal harm," in reading the instructions relating to the damage claims founded on negligence, we notice the judge plainly erred in other respects. In view of the impending retrial of the case, we discuss these errors as well.

A.

After apprising the jury that George Patrick Murphy failed to respond to the complaint and should be considered liable for the harm sustained, the judge proceeded to explain the negligence claim brought by the plaintiff against the hotel's owners and operators. The relevant instruction read:

The plaintiff's first claim against the defendants is that they were negligent. In order to find that the defendants were negligent, you must find the following elements:

(1) That the defendants owed Linda Knodle a duty;

(2) That the defendants breached that duty;

(3) That Linda Knodle's death was proximately caused by that breach of duty.

The instruction thus served to delineate the elements of negligence as viewed by the judge and directed the jury to find the defendants were negligent only if they owed Linda Knodle a duty, the duty was breached, and her death was "proximately caused" by the breach.

Yet whether there is a duty or not "is entirely a question of law," *Bidar v. Amfac, Inc.,* 66 Haw. at 552, 669 P.2d at 158, and it was error for the judge to submit that question to the jury for a finding.[11] We have misgivings about the reference to "proximate cause"

---

[11]We surmise the jury could have been given an instruction on duty because there might have been a dispute on the existence of a "special relationship." If the

too. While its use in the foregoing context probably had no harmful effect, we think an avoidance of the term would have been the better part of discretion, given our acceptance of "substantial factor" rather than "proximate cause" as the norm for finding the defendant's negligence was a legally sufficient cause of the harm that befell Linda Knodle.

"The 'proximate cause' of an injury" was then defined as "that cause which in direct, unbroken sequence, produces the injury, and without which the injury would not have occurred." This was clearly a misstatement of the law. We have moved beyond the strictures of "direct, unbroken sequence" in the consideration of legal causation. It was error also to speak of legal cause as that "without which the injury would not have occurred" in the face of our holding in *Mitchell v. Branch,* where in affirming a judgment against the defendant we said "[i]t was enough that his negligence was a substantial factor in causing plaintiff's injuries." 45 Haw. at 132, 363 P.2d at 973. We read the trial judge's instruction as a variant of the "but for" rule. An emphasis on "factual quantum" rather than "legal significance" in the circumstances involved could well have misled the jury.

### B.

The judge's definition of "proximate cause" was followed by explanations of plural and concurring causes. We cannot fault the judge as far as these instructions are concerned. But he went on to advise the jury that:

> The independent acts of Mr. Murphy may be found by a preponderance of the evidence to supersede or excuse the negligence of a defendant in failing to provide adequate security at the Waikiki Gateway Hotel.
>
> However, if you find by a preponderance of the evidence that a defendant's negligence in failing to provide adequate security at the Waikiki Gateway Hotel created a reasonably fore-

---

instruction was given for this reason, it was incorrectly phrased. Moreover, we are convinced from a review of the whole evidence relating to the issue that no reasonable inference that Ms. Knodle was not a guest could be drawn therefrom. Hence, it was not an issue that should have been submitted to the jury.

seeable risk of criminal harm to Linda K. Knodle, you are instructed that the independent acts of Mr. Murphy do not operate, excuse any defendant found by you to be negligent.

An act is reasonably foreseeable if it appears to have been ordinary or usual under all the circumstances then existing.

The plaintiff argued the instruction fashioned by the court was improper; and as we observed, his claim of error regarding instructions is centered on this instruction. The defendants also objected, but they now maintain the error was harmless because the jury did not reach the issue of causation. We cannot agree.

To begin with, a hotel is under a duty to its guests to protect them from unreasonable risk of physical harm. *Restatement (Second) of Torts, supra,* § 314A. Because of the special relation, this duty extends "to risks arising . . . from the acts of third persons, whether they be innocent, negligent, intentional, or even criminal. (See § 302B.)." *Id.* comment d. George Murphy's independent acts could not have superseded or excused the defendants' negligence if such acts were reasonably foreseeable. *See* W.P. Keeton, *supra,* § 44, at 305. If they were not, the defendants would not have been liable. The discussion of independent acts and superseding cause apart from foreseeability added nothing that could have aided the jurors.

In the paragraph following the discussion of independent acts and superseding causes, the judge instructed the jury that the independent acts of George Murphy did not excuse a defendant if its failure to exercise due care created a reasonably foreseeable risk of criminal harm to Linda Knodle. We cannot fault the judge here, but in the succeeding paragraph he informed the jury that "[a]n act is reasonably foreseeable if it appears to have been ordinary or usual under all the circumstances then existing." We fail to see how murder can be "ordinary or usual" under any circumstance. We could say the same about lightning striking at any given place or time; yet since "the possibility is there, . . . it may require precautions for the protection of inflammables." *See supra* note 7. The test is whether "there is some probability of harm sufficiently serious that [a reasonable and prudent person] would take precautions to avoid it." *Tullgren v. Amoskeag Manufacturing Co.,* 82 N.H. at 276, 133 A. at 8. It is not whether the act or risk "appears to have been ordinary or usual under all the circumstances."

The defendants argue the instruction in question was related to causation, an issue the jury did not reach. True, the jury found each of them had breached no duty owed to Linda Knodle. But the defendants overlook the fact that the instruction was read to the jurors again during deliberations in response to their pointed query: "What is the definition of 'forseeable [sic] criminal acts of third parties'?" Whether there was a "[r]easonable foreseeability of harm is the very prototype of the question a jury must pass on in particularizing the standard of conduct in the case before it." 3 F. Harper, F. James, & 0. Gray, *The Law of Torts* § 18.8, at 744 (2d ed. 1986). And this is done to determine whether there was a breach of duty or not.

The judgment of the circuit court is vacated, and the case is remanded for a new trial.

*Paul A. Lynch* (*Michael R. Marsh* and *Mark S. Milker* with him on the briefs; *Case & Lynch,* of counsel) for appellant.

*Stephen B. MacDonald* (*Susan Oki Mollway* and *Patricia J. McHenry* with him on the brief; *Cades, Schutte, Fleming & Wright,* of counsel) for appellees.