**Aaron K. AKIONA, Plaintiff,**

v.

**UNITED STATES of America, Secretary of Defense, and John Does 1–25, Defendants.**

**Adam BAKER, Bonnie Baker, and Edward W. Moore, III, Plaintiffs,**

v.

**UNITED STATES of America, Secretary of Defense, John Does 1–10, Doe Corporations, Partnerships, and/or Other Entities 1–10, Defendants.**

**Civ. Nos. 87–0882–SPK, 87–0894–SPK.**

United States District Court, D. Hawaii.

Jan. 22, 1990.

Eric A. Seitz, Joan M. Yamaguchi, Honolulu, Hawaii, Lowenthal, August, Graham

& Seitz, Wailuku, Hawaii, for plaintiff Aaron K. Akiona.

David L. Turk, Jan T. De Werd, Turk & Agena, Honolulu, Hawaii, for Adam and Bonnie Baker and Edward W. Moore, III.

Theodore G. Meeker, Asst. U.S. Atty., Daniel A. Bent, U.S. Atty., Honolulu, Hawaii, for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SAMUEL P. KING, Senior District Judge.

This matter came on for trial on January 8, 1990. Having considered all the evidence, memoranda and arguments of the parties, the court hereby makes the following findings of fact and conclusions of law.

### A. *Findings of Fact*

Most of the salient facts in this case have been stipulated to by the parties. The plaintiffs bring their claims against the United States government under the Federal Tort Claims Act, and this court has jurisdiction pursuant to 28 U.S.C. § 1346(b). As the plaintiffs reside in the State of Hawaii and the claims arose in this state, venue is proper in this court pursuant to 28 U.S.C. § 1391(e).

Plaintiffs Aaron K. Akiona, Adam Baker, and Edward W. Moore, III were injured on June 1, 1985, at approximately 1:50 a.m., when a hand grenade was thrown in the parking lot of the Pirate Bully Hayes restaurant in Pearl City, Hawaii. It exploded among a group of people. Dennis Keliinui Kaululaau was arrested by Honolulu police and charged with attempted murder for the incident. Kaululaau was subsequently convicted at a state trial and is presently serving a lengthy prison sentence.

The only physical evidence remaining from the grenade was the handle or "spoon," which was recovered by the police. Although somewhat damaged by the explosion, the lot number imprinted on the spoon could be read and determined to be either HRV 1–50 6–66 or HRV 1–51 6–66. A specific determination between the two possible numbers could not be made due to the condition of the spoon. An investigation by the Bureau of Alcohol, Tobacco and Firearms (hereinafter "ATF") discovered that both lots of grenades had been manufactured by the Harvel Kilgore Corporation of Tennessee in 1966 for the United States government. Lot 1–50, which consisted of 30,000 grenades, was shipped to the Iowa Army Ammunition Plant in Burlington, Iowa. Lot 1–51, was shipped to varying locations. Of the total 24,707 grenades in this second lot, 700 were shipped to Okinawa, 12,557 were shipped to Missau, Germany, and 11,450 were shipped to Aliamanu, Hawaii. All of these shipments occurred between 1967 and 1969.

This is all that is known about the grenade that injured the plaintiffs. Further investigation by ATF and the military services failed to provide any additional information regarding the distribution or handling of the grenades in lots 1–50 or 1–51. The lack of information is not surprising given that the United States government has a regulatory policy authorizing the destruction of all records dealing with stored ammunition and explosives two years after the disposition of the ammunition or explosives. This policy is in force although there are, for our purposes, conflicting regulations requiring the investigation and reporting of lost, stolen, or missing arms and explosives.

Kaululaau, while testifying both at his criminal trial and during his deposition for this litigation, has maintained his innocence in the throwing of the grenade. Thus, he has not provided any information on how the grenade ended up in his possession. There is no evidence, however, to the effect that Kaululaau possessed or used the grenade on June 1, 1985, with the prior knowledge or consent of the United States.

Plaintiffs Akiona, Baker and Moore have suffered a great deal from the grenade explosion. Akiona and Baker in particular have endured serious, painful, and permanent injuries to their heads, arms, legs, and chests. They each underwent several surgeries and extended periods of hospitalization, and will continue to require medical treatment and care in the future. Up to

this point, plaintiff Akiona has incurred medical expenses in the amount of $43,-479.27. Plaintiff Baker has incurred medical expenses in the amount of $55,801.54. Plaintiff Moore has incurred medical expenses in the amount of $809.35. As a result of their grenade injuries, plaintiffs have suffered and will continue to suffer the loss of income and earnings.

The plaintiffs filed their claims in a timely manner and have exhausted their administrative remedies as required by the Federal Tort Claims Act.

## B. *Conclusions of Law*

The plaintiffs seek compensation under the theory that the grenade came to be in Kaululaau's possession through the negligence of the United States. Although the plaintiffs cannot prove negligence directly due to the lack of information available on the grenade, they argue that the doctrine of *res ipsa loquitur* should apply to this case. The application of this doctrine "relieves the plaintiff[s] from showing any particular acts of negligence and places on the defendant the burden of explaining that the accident did not occur from want of care on [its] part." *Guanzon v. Kalamau,* 48 Haw. 330, 332, 402 P.2d 289, 291 (1965). In response, the government presents two arguments. First, that the *res ipsa loquitur* doctrine should not apply because there exist numerous explanations, other than the government's negligence, as to how the grenade came into Kaululaau's possession. Second, the government argues that even if negligence were found, liability would not attach because Kaululaau's criminal act was not foreseeable and thus the government had no duty to the plaintiffs, and further, any government negligence was not a proximate cause of the plaintiffs' injuries.

 Addressing the government's first argument, the court finds that the application of *res ipsa loquitur* is appropriate for this case. The doctrine is applicable "whenever a thing that produced an injury is shown to have been under the control and management of the defendant and the occurrence is such as in the ordinary course of events does not happen if due care has been exercised." *Cozine v. Hawaiian Catamaran, Ltd.,* 49 Haw. 77, 82, 412 P.2d 669, 675 (1966). Moreover, the requisite "control and management" need only be established at the time of the negligence, not at the time of the injury. *Guanzon v. Kalamau,* 48 Haw. 330, 402 P.2d 289 (1965); *Jenkins v. Whittaker Corp.,* 785 F.2d 720, *cert. denied* 479 U.S. 918, 107 S.Ct. 324, 93 L.Ed.2d 296 (9th Cir.1986).

In the instant action, there is no question that the grenade which caused plaintiffs' injuries was initially in the possession, control and management of the United States government. The sparse evidence available on the grenade establishes that it was manufactured for and shipped to the United States government. Furthermore, decisions by the state's highest court have established that the inability to negate all other possible explanations besides the defendant's negligence does not prevent a plaintiff from benefitting under the *res ipsa loquitur* doctrine.

In *Cozine v. Hawaiian Catamaran, Ltd.,* 49 Haw. 77, 412 P.2d 669 (1966), the Supreme Court of Hawaii considered the *res ipsa loquitur* doctrine and rejected an argument similar to the one brought by the government in the present action. The defendant in *Cozine* contended that the issue of negligence should not have gone to the jury because the accident therein could have been caused in ways other than the defendant's negligence. In reply, the court stated:

> The rule of *res ipsa loquitur* ... means that 'the facts of the occurrence warrant the inference of negligence, not that they compel such an inference' (citations omitted).... There was enough evidence in the present case to take the case to the jury. Perhaps less would have sufficed. *Defendant's insistence that a full explanation of the accident be produced in order for the case to reach the jury, if acceded to would negate the doctrine of res ipsa loquitur altogether.* (emphasis added) *Id.* at 85, 412 P.2d at 677.

In the instant action, the government identifies several possible scenarios for how the grenade got into Kaululaau's possession without involving the actionable negligence of the United States. These include: theft from a properly secured facility involving no negligence on the part of the United States; negligence on the part of the United States in a foreign country leading to possession by a third party who shipped the grenade back to the United States; theft or negligent loss by an ally to whom the grenade was legally transferred. It is the government's contention that since the plaintiffs cannot eliminate these and other reasonable explanations, the inference of negligence would be inappropriate here.

Clearly, given the ruling in *Cozine*, the government's argument cannot stand. Further, the Hawaii Supreme Court's subsequent decision in *Winter v. Scherman*, 57 Haw. 279, 554 P.2d 1137 (1976), indicates that speculative hypotheses such as those proposed by the government need not be given great weight and need not prevent a finding of negligence, especially when these other possibilities also lack evidentiary support.

In *Winter*, both the driver and passenger of a van were killed when the van collided with a utility pole. The father of the passenger brought an action against the estate of the driver. There was no other car involved in the accident, no witnesses and no evidence of defects in the van or the highway. The defendant estate argued, however, that the inference of driver negligence could not be made, because other possibilities besides negligence could have caused the crash; for instance, horseplay in the van, or an animal or child on the road. In response to these hypothetical explanations, the court stated:

> [T]here was no evidence whatever supporting these inferences and the most that can be said is that there was no evidence which directly negated them. We conclude that the inference of negligence here is so strong that it could not reasonably have been rejected by the jury in favor of such speculative hypotheses. *Id.* at 283, 554 P.2d at 1140.

The court therefore upheld the lower court's grant of judgment for the plaintiff notwithstanding the verdict.

In a situation like the present, where the defendant has destroyed relevant information regarding something that was within its exclusive control, there is even more reason that an inference of negligence should be made, and that the burden of proof be shifted to the defendant.

In *Welsh v. United States*, 844 F.2d 1239 (6th Cir.1988), the Court of Appeals for the Sixth Circuit held that the destruction of evidence by government surgeons created a rebuttable presumption of negligence against the government. There, the plaintiff's decedent had undergone two surgeries and various treatment in a Veterans Administration hospital to battle a brain tumor. He later encountered complications and died. Suit was brought against the government for wrongful death. The plaintiff could not directly prove negligence, however, because crucial evidence in the case was destroyed when the surgeons discarded a skull flap which had been removed during the second surgery. Examination of the skull flap would have been able to reveal how long the decedent's brain had been infected, and thus whether the treatment he received had been negligent or not. Further, the destruction of the skull flap violated an applicable regulation governing hospital procedure, in that the skull flap should have been sent to a pathologist for evaluation.

The *Welsh* court therefore held that the government had the burden of proof in the case. It explained:

> When, as here, a plaintiff is unable to prove an essential element of her case due to the negligent loss or destruction of evidence by an opposing party, and the proof would otherwise be sufficient to survive a directed verdict, it is proper for the trial court to create a rebuttable presumption that establishes the missing elements of the plaintiff's case that could only have been proved by the availability of the missing evidence. The burden thus shifts to the defendant-spoliator to

rebut the presumption and disprove the inferred element of plaintiff's prima facie case. *Id.* at 1248.

In the present case, although the document destruction was authorized by government regulation, it did conflict with other regulations which require the reporting of arms or explosives which have been lost or stolen. In short, the government's action was "negligent" in a sense, even though authorized, and thus was of the type in *Welsh* that triggered a shifting of the burden of proof. The destruction of evidence is not the basis for an action. Rather, it serves as a reason why the evidentiary burden should be shifted to the government. As the court in *Welsh* noted, "When ... the customary approach would result in placing the burden upon a party who is not in a better position to produce the required proof, the courts have not hesitated to allocate the burden to the opposing party." *Id.* at 1245.

As there has been no evidence presented by the government to support the hypothetical scenarios it puts forth, nor any other type of evidence to show that the government acted with due care in regard to the grenade, the court concludes that the government has failed to meet its burden of proof. The government is therefore found to have been negligent.

■ The government's other argument in this case is that, even if negligence is inferred, Kaululaau's criminal actions prevent liability from attaching. The government relies on *Hulsman v. Hemmeter Development Corp.*, 65 Haw. 58, 647 P.2d 713 (1982), where the Supreme Court of Hawaii held that the seller of a rifle was not liable for negligence when the buyer of the gun subsequently used it to shoot the plaintiff. The court reasoned first, that the defendant seller had no duty to the plaintiff, and second that the criminal action of the buyer was an intervening cause such that any negligence on the part of the seller was not a proximate cause of plaintiff's injuries. Both of these issues entail an evaluation based on the standard of forseeability. As stated by the court, "the concept of forseeability is a limitation on the right to recover

on an actionable claim." *Id.* at 68, 647 P.2d at 720.

*Hulsman* is distinguishable given the differing facts in the present case. As the plaintiffs argue, it may not be foreseeable that someone will misuse a rifle. There are a number of legitimate uses to which a rifle may be put. A grenade, however, presents quite a different situation. There are no lawful civilian uses for a grenade, and it's only real purpose is as an "anti-personnel" weapon. It is very foreseeable, therefore, that any civilian who comes into possession of a grenade will use it in a manner that is likely to hurt people. Thus, the government had a duty to plaintiffs in this case.

■ The issue of proximate cause is more complex, but its analysis leads to a similar conclusion. The relevant inquiry in determining if a negligent act is a proximate cause of an injury is whether it was a substantial factor in bringing about the harm. *Knodle v. Waikiki Gateway Hotel, Inc.*, 69 Haw. 376, 742 P.2d 377 (1987). When a third party's criminal act is also involved, it must further be determined if such criminal act was reasonably foreseeable by the defendant. As the *Knodle* court pointed out, a third party's "independent acts could not have superseded or excused the defendants' negligence if such acts were reasonably foreseeable." *Id.* at 393, 742 P.2d at 388.

The government argues that Kaululaau's criminal act is an intervening cause in this case, and that the "reasonably foreseeable" standard in *Knodle* is not applicable since that case involved a special relationship between the defendant and plaintiff, that of innkeeper-guest, which is not involved in the present case. It is true that past caselaw in Hawaii has been reluctant to extend liability to a defendant when a third party's criminal act is also involved. See *Wolsk v. State*, 68 Haw. 299, 711 P.2d 1300 (1986); *Seibel v. City and County of Honolulu*, 61 Haw. 253, 602 P.2d 532 (1979); *Kau v. City and County of Honolulu*, 6 Haw.App. 370, 722 P.2d 1043 (1986). *Knodle* was the first to do so, based on the theory that an innkeeper had special duties to a guest.

However, in a situation such as the one now under consideration, where an extremely dangerous instrumentality is involved, Hawaii courts have imposed a special duty upon defendants. See *Iokepa v. United States*, 158 F.Supp. 394 (D.C.Haw. 1958) (indicating that the government was under a duty to exercise a high degree of care in the removal of unexploded dud shells from a firing range before returning the property to its owner); *Beckstrom v. Hawaiian Dredging Co., Ltd.*, 42 Haw. 353 (1958) (holding the defendant, who undertook blasting activities near another's property, to a strict liability standard). Therefore, just as in *Knodle* where a special duty was involved, a third party criminal act should not be held an intervening cause when the instrument of harm was a dangerous weapon, so long as the criminal act was reasonably foreseeable.

Several cases have imposed liability upon the United States government under the Federal Tort Claims Act for negligence involving weapons or explosives. See *Williams v. United States*, 352 F.2d 477 (5th Cir.1965); *Stewart v. United States*, 186 F.2d 627 (7th Cir.1951); *Duvall v. United States*, 312 F.Supp. 625 (E.D.N.C. 1970); *Hernandez v. United States*, 313 F.Supp. 349 (N.D.Tex.1969); *Parrott v. United States*, 181 F.Supp. 425 (S.D.Cal. 1960).

Especially relevant for our purposes is *Stewart*, wherein two young boys were injured by a grenade which they found in a vacant lot in their neighborhood. Four boxes of the grenades had been stolen from a nearby military reservation by several high school boys who had then left them in the lot. After finding that the government had been negligent in the manner in which it had stored the grenades, the court turned to the issue of proximate cause. The court, finding that the high school boys' criminal actions did not relieve the government from liability, stated:

> The intervening act of a third person does not necessarily relieve the author of an earlier negligent or wrongful act from responsibility when the intervening cause of an injury is of such nature as could reasonably have been anticipated, in which case the earlier negligent act, if it contributed to the injuries, may be regarded as the proximate cause. 186 F.2d at 632.

There is no question in this case that the government could reasonably foresee the actions of someone like Kaululaau. Where a dangerous weapon such as a grenade is involved, it is quite likely that an illegal possessor will use it in a manner to hurt others. I conclude that proximate cause was established.

Plaintiff Bonnie Baker seeks damages based on loss of consortium. Hawaii law allows for such derivative recovery when the original claim is a valid one. *Mist v. Westin Hotels, Inc.*, 69 Haw. 192, 738 P.2d 85 (1987); *Towse v. State*, 64 Haw. 624, 647 P.2d 696 (1982); *Doi v. Hawaiian Insurance & Guaranty Co., Ltd.*, 6 Haw.App. 456, 727 P.2d 884 (1986).

## C. *Damages*

Plaintiffs did not introduce any evidence as to economic losses or as to future medical expenses. I am left, therefore, with the stipulated special damages and the usual considerations relating to general damages.

I find that plaintiff Adam Baker is entitled to special damages in the amount of $55,801.54 and general damages in the amount of $250,000; that plaintiff Bonnie Baker is entitled to damages for loss of consortium in the amount of $15,000; that plaintiff Aaron K. Akiona is entitled to special damages in the amount of $43,479.27 and general damages in the amount of $100,000; that plaintiff Edward W. Moore III is entitled to special damages in the amount of $809.35 and general damages in the amount of $25,000.

The foregoing constitute the findings of fact and conclusions of law required by Rule 52 of the Federal Rules of Civil Procedure.

Let judgments enter accordingly.