Augustus **CRUZ**, Plaintiff,

v.

**UNITED STATES of America, Defendant.**

No. Civ. 96–00224 BMK.

United States District Court,
D. Hawaii.

Nov. 28, 1997.

■■■■■■■■

Mark S. Davis, Davis, Levin, Livingston, Grande, Honolulu, HI, for Plaintiff.

Theodore G. Meeker, Asst. U.S. Atty., Honolulu, HI, for Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

KURREN, United States Magistrate Judge.

Plaintiff Augustus Cruz ("Cruz") filed this action against Defendant United States of America ("USA") following a May 27, 1994, accident in which Cruz was seriously injured when a United States Postal Service ("USPS") truck, driven by George Kameda ("Kameda"), crashed into a parked car causing that car to jump the sidewalk and strike Cruz. Kameda lost control of the postal truck upon losing consciousness due to a heart block. Cruz contends that Kameda was negligent in both failing to see a doctor for diagnosis and treatment of coronary heart disease and failing to pull over to the side of the road prior to losing consciousness. USA denies negligence contending that the accident was unavoidable.

Pursuant to 28 U.S.C. § 636(c), Fed. R.Civ.P. 73 and Local Rule 73.1, the parties consented to trial before a United States Magistrate Judge. This case was heard at a bench trial September 16 and 18, 1997. Having carefully considered the evidence presented at trial and the arguments of counsel, the court directs the Clerk of Court to enter judgment in favor of USA and against Cruz. The court's findings are as follows:

### FINDINGS OF FACT

On May 27, 1994, about mid-day, Cruz was standing on the sidewalk next to Queen Emma Street, in Honolulu, talking to a friend. At that time, Kameda was driving a USPS truck on Queen Emma Street when he suffered a heart block, causing him to lose consciousness. The truck veered sharply to the left and smashed into a parked car, pushing the car onto the sidewalk where it struck Cruz and his friend. Cruz was thrown approximately five feet and landed on his head, causing him to lose consciousness. Cruz suffered a severe concussion with pain, loss of memory and disorientation. In addition, Cruz suffered a fracture of his right knee, the temporary loss of his left toenails, contusions of his left leg, and back injuries.

Following the accident, Kameda was diagnosed with coronary artery disease, which is the probable cause of his heart block. Kameda underwent bypass surgery and insertion of a permanent pacemaker. At the time of the accident, Kameda was approximately fifty-five years old, smoked between one and one and a half packs of cigarettes per day and was obese. He knew that an aunt suffered one or more strokes. He also knew that the risk of developing coronary artery disease is increased for smokers and those with a family history of the disease. At the time of the accident, however, Kameda believed he was in relatively good health and did not know he suffered from coronary artery disease. Kameda did experience intermittent episodes of lightheadedness or dizziness sometime between several years to several months prior to the accident. These episodes were not related to exertion, but occurred after moving from a supine to a sitting position. At least twenty years ago and then again many years prior to the accident, Kameda experienced chest pains. He sought medical treatment after the first of these episodes, which revealed no health

problem, but did not seek medical treatment after the second episode.

Right after the accident, Kameda told various emergency personnel that just before he lost consciousness, he suddenly felt funny or lightheaded, like he would pass out. Kameda also reported his prior episodes of chest pain and lightheadedness/dizziness. He further reported no prior history of unconsciousness, labored breathing or chest pain in connection with exertion and no problem with high blood pressure or high cholesterol. Kameda reported leg pain and dizziness after the accident. Kameda, however, does not remember speaking with emergency personnel after the accident and denies experiencing any symptoms just prior to the accident. The court finds Kameda's post accident reports to emergency medical personnel to be more credible than his current memory. Thus, the court finds that Kameda did experience lightheadedness/dizziness just prior to losing consciousness. There is no evidence, however, to support a finding that Kameda experienced this episode of lightheadedness/dizziness any earlier than immediately prior to losing consciousness.

At the time relevant to this case, the USPS required all drivers, including Kameda, to complete a Physical Fitness inquiry for Motor Vehicle Operators form every four years when renewing their permits to drive USPS trucks. Kameda last completed this form on October 6, 1992. In box no. 18 of the form, Kameda checked "no" in response to the question "have you ever or have you now" experienced "e. palpitation, chest pain or shortness of breath [and] f. dizziness or fainting spells[.]" Kameda knew that he might be required to see a doctor if he checked "yes" to any symptoms in box no. 18. He further knew that if he had any problems with heart disease, he might lose his driving privileges. Kameda said he does not like to see doctors and had not seen a doctor for a physical exam for many years prior to the accident. However, Kameda denies experiencing any of the symptoms listed in box no. 18 when he last completed the fitness form.

## CONCLUSIONS OF LAW

Original jurisdiction is based on the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671 et seq. Venue is proper pursuant to 28 U.S.C. § 1391(e)(2) as the events from which this case arise occurred within this district.

■ The FTCA allows recovery against the United States for injuries caused by the negligent acts or omissions of a federal employee acting in the scope of employment. 28 U.S.C. §§ 1346(b), 2674. The liability of the United States is determined in the same manner as if the United States were a private individual under the law of the state where the incident occurred. *Id.; Cameron v. Janssen Bros. Nurseries, Ltd.,* 7 F.3d 821, 825 (9th Cir.1993).

■ Under Hawaii law, the elements for a cause of action in negligence are: (1) a duty or obligation recognized by the law requiring the defendant to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) a failure to conform to the standard required; (3) a reasonably close causal connection between the conduct and the resulting injury; and (4) actual loss or damage. *Knodle v. Waikiki Gateway Hotel, Inc.,* 69 Haw. 376, 385, 742 P.2d 377, 383 (1987). A person generally "owes a duty of care to all foreseeable plaintiffs 'subjected to an unreasonable risk of harm by the actor's ... conduct.'" *Tancredi v. Dive Makai Charters,* 823 F.Supp. 778, 786 (D.Haw.1993) (quoting *Seibel v. City & County of Honolulu,* 61 Haw. 253, 257, 602 P.2d 532, 536 (1979)). This duty of care exists "only to those who are foreseeably endangered by the [defendant's] conduct and only with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous." *Janssen v. American Hawaii Cruises, Inc.,* 69 Haw. 31, 34, 731 P.2d 163, 165–66 (1987) (quoting *Hulsman v. Hemmeter Development Corp.,* 65 Haw. 58, 68, 647 P.2d 713, 720 (1982)). "The test of what is reasonably foreseeable is 'whether there is some probability of harm sufficiently serious that a reasonable and prudent person would take precautions to avoid it.'" *Tancredi,* 823 F.Supp. at 786, (quoting *Knodle,* 69 Haw. at 388, 742 P.2d at 385).

■ Kameda lost consciousness, which prevented him from maintaining control of the truck. The court must determine wheth-

er Kameda's incapacity was foreseeable such that he owed a duty to Cruz. In determining whether a driver's incapacity to control his vehicle was foreseeable, courts generally consider a number of factors including:

> the extent of the driver's awareness or knowledge of the condition that caused the sudden incapacity; whether the driver had sought medical advice or was under a physician's care for the condition when the accident occurred; whether the driver had been prescribed, and had taken, medication for the condition; whether a sudden incapacity had previously occurred while driving; the number, frequency, extent, and duration of incapacitating episodes prior to the accident while driving and otherwise; the temporal relationship of the prior incapacitating episodes to the accident; a physician's guidance or advice regarding driving to the driver, if any; and medical opinions regarding the nature of the driver's condition, adherence to treatment, foreseeability of the incapacitation, and potential advance warnings which the driver would have experienced immediately prior to the accident.

*McCall v. Wilder,* 913 S.W.2d 150, 156 (Tenn. 1995).

Kameda was not aware that he suffered from coronary artery disease, did not seek medical advice for any possible heart condition, was not under a physician's care for this or any other condition at the time of the accident and had never previously suffered any incapacity while driving or otherwise. Kameda did experience some episodes of lightheadedness/dizziness, but not for at least several months prior to the accident. He also suffered two episodes of chest pain, but these episodes occurred many years before the accident. Dr. Wallach, a cardiologist and Cruz's expert witness, testified that a reasonably prudent fifty-five year old male, in Kameda's condition, possessing the same risk factors, who has not seen a doctor for five to six years, would have no reason to refrain from driving. Finally, although Kameda did complete the USPS Physical Fitness Inquiry for Motor Vehicle Operators form, where he was required to note whether he experienced various health conditions/episodes, this fact is insufficient to establish the requisite foreseeability. The evidence established that USPS employees who indicated the presence of some health conditions/episodes were not necessarily required to seek medical care. Rather, Dr. Aoki, the USPS physician, testified that he used the form as a screening device to identify only recent and recurring symptoms which might warrant medical evaluation. Furthermore, knowledge that he experienced one or more of these conditions/episodes at least several months prior to the accident is not sufficient to establish the requisite foreseeability that Kameda would lose consciousness. In short, Kameda was not aware of any underlying health condition and did not have symptoms from which he should have known of such an underlying health condition. Thus, he had no reason to foresee his loss of consciousness prior to deciding to drive on May 27, 1994.

Furthermore, Kameda had no reason to foresee that his failure to see a doctor prior to May 27, 1994, would pose an unreasonable risk to others with whom he might come into contact while driving. Accordingly, Kameda owed no duty to Cruz to see a doctor. This court cannot state that a fifty-five year old male with a general awareness that he presents some risk factors for coronary artery disease with no current symptoms, but a history of infrequent episodes of lightheadedness/dizziness and chest pains, would or should foresee that his failure to see a doctor would pose such an unreasonable risk. Neither the amount of driving required of Kameda by his job, nor Kameda's steadfast refusal to see a doctor over many years, even for general check-ups, alters this conclusion. Under the circumstances of this case, particularly without symptoms near the time of the accident, the imposition of a legal duty to see a doctor is simply too attenuated. This court does not doubt that this accident might not have occurred had Kameda gone to see a doctor up to several months before the accident. Nevertheless, Kameda's failure to act reasonably in his general approach to life, under the circumstances of this case, is insufficient to trigger the existence of a legal duty to see a doctor. Had Kameda experienced symptoms closer to the time of the accident, this court might well have reached a different conclusion, but that is not the situation here.

██ Even after Kameda began driving on May 27, 1994, his loss of consciousness was unforeseeable. Immediately after Kameda experienced the feeling that he would pass out, he lost consciousness. Because he had no advance warning of his incapacity, he had no duty to Cruz to pull over to the side of the road. Rather, the evidence in this case supports only the generally accepted duty to exercise reasonable care in connection with driving, including "keeping his [truck] under control at all times so as to avoid collision or contact with vehicles, pedestrians, and other persons properly using the highway." 93 ALR3d 326, 1979 WL 52375, § 2[a]; see McCall, 913 S.W.2d at 154. There is no evidence to suggest that Kameda exercised anything other than reasonable care both in his operation of the truck and his decision to drive on May 27, 1994. A reasonably prudent person would pull over to the side of the road only if he had time to engage in such conduct. Kameda lacked that time, his incapacity was unforeseen and there is no evidence to suggest that Kameda otherwise operated his vehicle in an unsafe or negligent manner. Accordingly, Kameda did not breach this general duty to use reasonable care in connection with driving either by deciding to drive that day or failing to pull off the road before losing consciousness.

This court sympathizes with Cruz, an innocent bystander who was truly in the wrong place at the wrong time when this unfortunate accident occurred. Nevertheless, because Kameda was not negligent and the accident was unavoidable, Defendant is not liable to Cruz.

IT IS SO ORDERED.