**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000234
31-AUG-2022
09:15 AM
Dkt. 111 SO**

NO. CAAP-17-0000234

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


PFLUEGER, INC., Plaintiff-Appellant, v.
AIU HOLDINGS, INC., NATIONAL UNION FIRE INSURANCE COMPANY OF
PITTSBURGH, PENNSYLVANIA, Defendants/Crossclaim Defendants-
Appellees, and NOGUCHI & ASSOCIATES, INC.,
Defendant/Crossclaim Plaintiff-Appellee, and
DOE CORPORATIONS 1-10; DOE PARTNERSHIPS 1-10;
and DOE ENTITIES 1-10, Defendants.


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 09-1-1326)


SUMMARY DISPOSITION ORDER
(By: Wadsworth and McCullen, JJ.,
with Hiraoka, Presiding Judge, concurring separately)

Plaintiff-Appellant Pflueger, Inc. (**Pflueger**) appeals from the Circuit Court of the First Circuit's March 14, 2017 Final Judgment, which was entered in favor of Pflueger's insurance broker, Defendant/Crossclaim Plaintiff-Appellee Noguchi & Associates, Inc. (**Noguchi**).[1]  In its points of error on appeal, Pflueger contends that the circuit court erred in (1) granting Noguchi's motion for summary judgment, (2) denying Pflueger's motion for reconsideration, and (3) entering final judgment in favor of Noguchi.

---

[1]  The Honorable Jeannette H. Castagnetti presided.

Specifically, Pflueger argues that, "as to causation, despite the deposition testimony of Mr. Van Dina and Ms. Ngeo, there still exists a question of fact as to whether the insurer would have found coverage and ultimately covered the claim, had the subpoenas been timely tendered."

Upon careful review of the record and the briefs submitted by the parties and the issues raised, we resolve this case as discussed below, and vacate and remand.

## Background

Because this case has a long history spanning approximately fourteen years, we reiterate only the facts relevant to resolving this appeal.

**Subpoenas and Claims**

During the relevant time, Pflueger was insured by Defendant/Crossclaim Defendant-Appellee National Union Fire Insurance Company of Pittsburgh, Pennsylvania (**National Union**). Defendant/Crossclaim Defendant-Appellee AIU Holdings, Inc. (**AIU**) was National Union's "authorized representative." In May 2008, when Pflueger notified Noguchi that it had received certain federal grand jury subpoenas, Noguchi informed Pflueger that the subpoenas did not qualify as a "claim" under two insurance policies issued by National Union to Pflueger (**Policies**). Noguchi did not forward a claim or the subpoenas to AIU or National Union, and did not seek clarification as to whether the grand jury subpoenas were covered under the Policies. Relying on Noguchi's representations, Pflueger took no further action until its attorney submitted a demand letter tendering Pflueger's

defense to National Union approximately nine months later, in February 2009.

AIU's claims analyst, Dennis Van Dina (**Van Dina**), responded to Pflueger's attorney in two letters dated April 29, 2009, one for each of the Policies.  Van Dina concluded that Pflueger's claim was untimely, as follows:

(1)    "Policy no. 052-68-49 has a <u>Policy Period September 27, 2007 to September 27, 2008</u>.  Coverage B states that the Policy provides coverage for Claims first made against the Company or an Individual Insured during the Policy Period or Discovery Period (if applicable).  The Grand Jury Subpoena was issued on May 22, 2008.  Thus, the matter will be deemed to have been made on May 22, 2008.  Clause 7 requires that a Claim must be both made and reported during the Policy Period or Discovery Period (if applicable) . . . . However, <u>this matter was submitted to National Union on February 17, 2009; outside the applicable reporting periods</u> found with Clause 7 Notice/Claim Reporting Provisions, and as amended by Endorsement #2.  <u>Therefore, coverage is precluded</u>."

(2)    "Policy no. 052-68-49[2] [sic] has a <u>Policy Period September 27, 2008 to September 27, 2009</u>.  Coverage B states that the Policy provides coverage for Claims first made against the Company or an Individual Insured during the Policy Period or Discovery Period (if applicable).  The Grand Jury Subpoena was issued on May 22, 2008.  Thus, the matter will be deemed to have been made on May 22, 2008; outside the Policy Period.  Clause 7 requires that a Claim must be both made and reported during the Policy Period or Discovery Period (if applicable) . . . . .  However, <u>this Claim was made outside the Policy Period. Therefore, coverage is precluded</u>."

(Emphases added.)  Regarding each of the Policies, Van Dina added, "assuming this matter was both made and reported as per the requirements of the Policy, the materials submitted to National Union would not constitute a Claim."  Van Dina stated, "the language of the Policy requires that an indictment, information or similar document is necessary for a Claim as defined."  Van Dina further stated, "National Union's preliminary coverage position is based on the information presently

---

[2]  Van Dina incorrectly lists the Policy No. as 052-68-49.  The correct Policy No. is 01-277-00-32.

available[,]" and asked that Pflueger provide "any additional information . . . you feel would either cause us to review our position or would assist us in our investigation or determination[.]"

Following Van Dina's letters, Pflueger filed an action against Noguchi, AIU, and National Union. Pflueger brought negligence and negligent misrepresentation claims against Noguchi. Pflueger alleged that Noguchi failed to tender the grand jury proceeding to AIU and National Union, and that as a proximate result of Noguchi's negligence, Pflueger was denied coverage for the matter. Pflueger further alleged that Noguchi made untrue representations that the grand jury proceeding was not covered under the Policies, and that Pflueger reasonably relied on these representations in declining for a time to tender the grand jury matter directly to AIU and National Union; as a proximate result, AIU and National Union denied Pflueger's eventual tender of the grand jury matter as untimely and denied coverage.

**Tiffany Ngeo's Testimony**

In preparation for litigation, AIU's Senior Complex Claims Director, Tiffany Ngeo (**Ngeo**), was deposed. She was asked whether it was AIU's "position that there was no coverage afforded for the grand jury subpoenas, regardless of when they were reported to . . . AIU . . . ." Ngeo responded, "Well, we have two defenses. One of them for each of the policy [sic], is that it was either not made or reported within the policy. And the other defense is that the grand jury subpoenas were not a claim per the policy."

4

Ngeo was also asked, "Is it fair to say that [AIU's] position is that, first, there's no coverage for the grand jury subpoenas -- grand jury subpoenas under the policy; and second, even if there was coverage, they were not reported timely[?]" Ngeo responded, "the grand jury subpoenas do not meet the definition of a claim under either policy."

**Van Dina's Testimony**

Van Dina was also deposed and was asked, "Even if it had been made timely, it's not a covered claim; is that right?" Van Dina responded, "Right.  Well, no.  I'm sorry.  Let me rephrase that.  Not that -- it <u>may</u> not even constitute the definition of a claim."  (Emphasis added.)

Van Dina was later asked, "[a]ssuming this claim had been reported to where you found it to be timely, would there still have be [sic] coverage under the policy?"  Van Dina responded, "I do not believe, based on what I reviewed today, that -- that a claim would have been made at that time.  So I would say that coverage would not be available."

Van Dina was asked again, "regardless of whether the claim was reported in May of 2008 allegedly when the insured received or was served with the subpoena or in February of 2009 when it came across your desk, your position with respect to coverage would not change?"  Van Dina answered, "No."  Van Dina confirmed that his position was the subpoenas were not claims under the policy.

**Pflueger Settles With AIU and National Union**

Following these depositions, Pflueger settled with AIU and National Union, as evinced by AIU and National Union's

petition for finding of good faith settlement, which the circuit court granted, leaving the negligence claims against Noguchi to be litigated.

**James Schratz's Testimony**

In the meantime, Pflueger's witness, James Patrick Schratz (**Schratz**), was deposed.  Schratz was critical of National Union, explaining that its "conduct fell below the standard of care when it failed to even research or consider contrary or supporting legal authority."

Schratz opined that "Noguchi failed to timely report the grand jury subpoenas and the Internal Revenue Service's criminal investigation as a possible claim to Defendant National Union."  Noguchi also "didn't explain the pros and cons, i.e., your defense fees of 1 million may be covered and your premium may go up x percent.  Let me call the carrier and ask."  Instead, Noguchi "rendered an opinion as to coverage under the policy when it admitted that such a determination was to be made by the insurance company."

Noguchi's counsel questioned Schratz about whether Noguchi caused Pflueger's damages, and Schratz acknowledged that he was not asked to look at damages or retained to render any opinions regarding causation.  When asked, "you have no opinion and have not been retained to express an opinion whether or not those coverage representations caused any damages to Pflueger[,]" Pflueger's counsel objected as misstating the prior testimony.  Schratz then answered, "coverage is still an open issue.  The very fact that National Union paid [the settlement amount], they

don't pay money without thinking there's a problem, but with the -- the coverage is still an open issue . . . ."

Schratz explained, "[i]f the court decides there's no coverage, . . . then Noguchi's conduct hasn't caused any problems that I know of." Schratz continued, "If the court determines there's coverage, and I've got to tell you I think there is, but I'm not going to give an opinion on that, although I just did, then I think Noguchi's -- I think Noguchi's got serious liability here."

Schratz was then asked if he would agree, based on Ngeo's and Van Dina's testimony, it was National Union's position "that regardless of when Noguchi or any other entity had reported this claim to National Union, National Union's coverage denial decision would have been the same?" Schratz replied, "Based on Dina's -- Van Dina's deposition testimony, yes."

When questioned again about causation, specifically, "isn't the crux of this case whether or not the conduct of Noguchi proximately caused any damage to the insured[,]" Schratz responded that it was "way outside the scope of my retention" and "I've never looked at that issue." Schratz was then asked, "is it fair to say you're not going to express that opinion at trial?" Schratz answered, "I'm going to express the opinion it's way outside the scope of my retention. I'm not going to express any opinion on causation or the causation of the damages."

**Summary Judgment - Subpoenas Constituted A Claim**

Prior to trial, the circuit court granted Pflueger's motion for partial summary judgment, finding that "the Grand Jury Subpoenas, dated May 22, 2008 and directed at Pflueger, Inc.

7

constitute a 'claim' as that term is defined under Insurance Policy No. 052-68-49 and Insurance Policy No. 01-277-00-32 issued by National Union . . . to Pflueger, Inc., as the named insured."

**Trial and Appeal**

During trial, the circuit court excluded Van Dina's and Ngeo's testimonies on hearsay grounds, and the jury returned a special verdict in favor of Pflueger. Pflueger, Inc. v. Noguchi & Assocs., Inc., 136 Hawaiʻi 372, 362 P.3d 805, No. CAAP-14-0001032, 2015 WL 7723045 at *2-3 (App. Nov. 23, 2015) (Mem. Op.) (**Pflueger I**). Noguchi appealed, and this court vacated the judgment, holding that the circuit court erred in excluding Van Dina's and Ngeo's testimonies because they were essential to Noguchi's defense. Id. at *3-5. On appeal, Noguchi did not challenge the circuit court's order finding that the grand jury subpoenas constituted a "claim" under the Policies.

**Summary Judgment – No Causation**

On remand, Noguchi moved for summary judgment on the issue of causation, arguing that the testimony of witnesses "fails to put forth any evidence which might support a finding of proximate cause against Noguchi." (Formatting altered.) The circuit court agreed, finding that Pflueger "has put forward no evidence to the contrary to establish that Noguchi's conduct was a contributing or substantial factor in insurer's decision to deny coverage." (Formatting altered.) The circuit court further found that, even if Noguchi was negligent, "it is undisputed and uncontroverted that the insurer was going to deny [Pflueger's] claim anyway." The circuit court, thus, granted Noguchi's motion for summary judgment.

## Discussion

We review the circuit court's grant of summary judgment de novo. Dairy Rd. Partners v. Island Ins. Co., Ltd., 92 Hawaiʻi 398, 411, 992 P.2d 93, 106 (2000). "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Id. (citations and brackets omitted). "A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." Id. (citations omitted). "The evidence must be viewed in the light most favorable to the non-moving party." Id. (citations omitted).

The movant bears the burden of establishing that there was no genuine issue of material fact and that the movant was entitled to a judgment as a matter of law. Id. at 412, 992 P.2d at 107. In defending against the motion, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Id. (citation omitted).

In determining legal (proximate) cause, "the defendant's negligence need not have been the whole cause or the only factor in bringing about the harm. It was enough that his negligence was a substantial factor in causing plaintiff's injuries." Knodle v. Waikiki Gateway Hotel, Inc., 69 Haw. 376, 386, 742 P.2d 377, 390 (1987) (cleaned up). In particular, with negligence and comparative negligence, "experience has established that proximate cause, sole negligence, contributory

9

negligence, concurring negligence, and, by extension, comparative negligence are not absolutes." Taylor-Rice v. State, 91 Hawaiʻi 60, 69, 979 P.2d 1086, 1095 (1999) (cleaned up). "It is the exceptional case when they can be determined and enforced as a matter of law." Id.

"Only where there is no conflict from the evidence and but one inference can be drawn from the facts is it the duty of the court to pass upon the questions of negligence and proximate cause as questions of law." Id. (cleaned up). But, "where there is conflicting evidence . . . on the issue of proximate causation, the question is one for the trier of fact." Id. at 75, 979 P.2d at 1101 (citation and brackets omitted).

In its motion for summary judgment, Noguchi asserted there was no evidence of causation, and offered the deposition testimonies of Ngeo and Van Dina to show that AIU had determined that the grand jury subpoenas failed to meet the definition of a claim under the Policies. Noguchi makes a similar argument on appeal, arguing based on the same deposition testimony that "AIU would have denied coverage even if Noguchi had requested coverage in May 2008 because the subpoena did not meet AIU's definition of a claim."

This assertion as to what AIU "would have done" had a timely tender been made was the sole basis for the circuit court's grant of summary judgment on the issue of causation. In light of the full summary judgment record, however, we hold that the causation issue as framed by Noguchi (*i.e.*, whether AIU would have denied coverage even if Noguchi had timely tendered the

grand jury subpoena matter) involved a genuine issue of material fact.

Again, the issue of causation is generally an issue left to the fact finder, and "[i]t is the exceptional case when [it] can be determined and enforced as a matter of law." Taylor-Rice, 91 Hawaiʻi at 69, 979 P.2d at 1095. Here, Noguchi bore the burden of establishing that there was no genuine issue as to whether its conduct caused Pflueger's losses. See Dairy Rd., 92 Hawaiʻi at 411-12, 992 P.2d at 106-07. In an attempt to meet this burden, Noguchi produced testimony that, regardless of timing, AIU would have denied coverage because the subpoenas were not a claim under the Policies.

This testimony, however, viewed in the light most favorable to Pflueger, does not make this the exceptional case. Although this testimony undermined the causation element, it was not subject to only one inference and, thus, did not completely dispose of the causation element. See Pflueger I at *4 (explaining that "Van Dina and Ngeo's testimonies undermine the causation element . . ."); see also First Ins. Co. of Hawaii, Ltd. v. Sariaslani, 80 Hawaiʻi 491, 495-96, 911 P.2d 126, 130-31 (App. 1996) (ruling that homeowners' insurer did not satisfy its burden of showing that there was no genuine issue of material fact as to whether the insureds would have been denied insurance if the insurer had been aware of previous losses that the insureds did not disclose in their insurance application). Whether Noguchi's actions and inactions were legal causes of Pflueger's losses in light of AIU's assertions were issues for the fact finder and could not be decided as a matter of law.

11

Thus, Noguchi failed to meet its burden of establishing that there was no genuine issue of material fact and it was entitled to judgment as a matter of law.

Even if Noguchi had met its burden, Pflueger submitted opposing evidence, including Van Dina's April 29, 2009 letters, stating in part that coverage under the respective Policies was precluded because the claim was made outside of the relevant policy period or the applicable reporting periods.  Viewed in the light most favorable to Pflueger, this statement raised a question as to whether Noguchi's conduct in failing to timely tender the grand jury subpoena matter to AIU and National Union was a substantial factor in causing Pflueger's alleged loss.[3] The evidence Pflueger submitted also raised a question as to whether Noguchi's alleged negligent misrepresentations – that the grand jury proceeding was not covered under the Policies – caused loss to Pflueger.  See Zanakis-Pico v. Cutter Dodge, Inc., 98 Hawaiʻi 309, 321, 47 P.3d 1222, 1234 (2002) ("Plaintiffs may recover the pecuniary losses caused by their justifiable reliance on a negligent misrepresentation.").  These questions were genuine issues of material fact.

_____

[3]  Pflueger asserted that it had incurred significant attorneys' fees and costs in responding to the grand jury subpoenas, caused by Noguchi's alleged negligence and the resulting loss of insurance coverage.  Pflueger also submitted copies of the Policies, which provided Directors, Officers and Private Company Liability Coverage as follows:

> This policy shall pay the Loss of [Pflueger] arising from a:
>
> (i)   Claim first made against [Pflueger] . . .
>
> during the Policy Period . . . and reported to the Insurer pursuant to the terms of this policy for any Wrongful Act . . . .  Insurer shall, in accordance with Clause 4 of this Coverage section, advance Defense Costs of such Claim prior to its final disposition.

Based on Van Dina's April 29, 2009 letters, it appears that AIU and National Union also refused to advance defense costs to Pflueger.

We, therefore, hold that the circuit court erred in granting Noguchi's motion for summary judgment. Given this holding, we need not address Pflueger's remaining points of error as they relate to the granting of Noguchi's motion for summary judgment.

Based on the foregoing, we vacate the circuit court's March 14, 2017 Final Judgment and remand this case for further proceedings.

DATED:  Honolulu, Hawaiʻi, August 31, 2022.

On the briefs:

Lyle S. Hosoda
Kevin T. Morikone
Addison D. Bonner
Kristen A. Yamamoto
for Plaintiff-Appellant.

Richard B. Miller
Patricia Kehau Wall
Christopher Shea Goodwin
for Defendant/Crossclaim
Plaintiff-Appellee.

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge

**CONCURRING OPINION OF HIRAOKA, J.**

I concur that the circuit court erred by granting Noguchi's motion for summary judgment.  But in my view: **(1)** what National Union (or AIU) "would have done" had Noguchi timely tendered Pflueger's subpoena[1] is not a material fact; and **(2)** Noguchi did not satisfy its burden as the summary judgment movant.

This is an insurance agent errors and omissions case.  Pflueger has the burden to prove (among other things[2]) that if Noguchi had tendered the subpoena to National Union in May 2008, National Union would have been obligated (under the insurance policy then covering Pflueger (the **2007-08 Policy**)) to advance defense costs incurred by Pflueger to respond to the subpoena.[3]

**(1)**  In my view, how National Union "would have" responded to a timely tender is not material to Noguchi's tort liability to Pflueger.  For summary judgment purposes, "[a] fact

---

[1]    The record indicates that an Assistant United States Attorney subpoenaed certain documents from Pflueger's custodian of records on May 22, 2008.  Although the record indicates that other subpoenas were served upon other entities, the record does not contain information sufficient to determine whether any of the other entities qualify as an insured under Pflueger's insurance policies.

[2]    "Tersely stated, the elements of a cause of action founded on negligence are: 1. A duty, or obligation, recognized by the law, requiring the defendant to conform to a certain standard of conduct, for the protection of others against unreasonable risks; 2. A failure on the defendant's part to conform to the standard required: a breach of the duty; 3. A reasonably close causal connection between the conduct and the resulting injury[;] and 4. Actual loss or damage resulting to the interests of another[.]"  Knodle v. Waikiki Gateway Hotel, Inc., 69 Haw. 376, 384–85, 742 P.2d 377, 383 (1987) (cleaned up) (reformatted).

[3]    The 2007-08 Policy provided Directors, Officers and Private Company Liability Coverage as follows:

> This policy shall pay the Loss of [Pflueger] arising from a:
>
> (i)    *Claim* first made against [Pflueger] . . .
>
> . . . .
>
> during the Policy Period . . . and reported to [National Union] pursuant to the terms of this policy *for any Wrongful Act* . . . .  [National Union] shall, in accordance with Clause 4 of this Coverage Section, **advance Defense Costs of such Claim** prior to its final disposition.

(Emphasis added.)  The difference between a duty to defend and a duty to advance defense costs is not material to the issue presented by this appeal.

is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." <u>Ralston v. Yim</u>, 129 Hawai'i 46, 55-56, 292 P.3d 1276, 1285-86 (2013) (quoting <u>First Ins. Co. of Haw. v. A & B Props., Inc.</u>, 126 Hawai'i 406, 413-14, 271 P.3d 1165, 1172-73 (2012)).

Had Noguchi tendered the subpoena to National Union in May 2008 — before the 2007-08 Policy expired — National Union would have had three options: (1) advance Pflueger's defense costs to respond to the subpoena; (2) decline to advance defense costs; or (3) advance defense costs under a reservation of rights.[4]  National Union's denial of a tender would not end the story; Pflueger could have filed a declaratory relief action,[5] with or without a claim for bad faith.[6]  If National Union agreed to advance defense costs under a reservation of rights, National Union could itself have filed a declaratory relief action, with or without a claim for reimbursement of defense costs advanced.[7]

If a court were to rule that National Union was **_not_** obligated to advance Pflueger's defense costs, Noguchi's failure

---

[4]     Concerning a liability insurer's reservation of rights, <u>see generally</u> <u>Finley v. Home Ins. Co.</u>, 90 Hawai'i 25, 975 P.2d 1145 (1998).

[5]     <u>See</u> Hawaii Revised Statutes § 632-1 (1993) (providing that courts may grant declaratory relief where there is an actual controversy between the parties).

[6]     <u>See</u> <u>Best Place, Inc. v. Penn Am. Ins. Co.</u>, 82 Hawai'i 120, 132, 920 P.2d 334, 346 (1996) (holding that there is a legal duty, implied in a first- and third-party insurance contract, that the insurer must act in good faith in dealing with its insured, and a breach of that duty of good faith gives rise to an independent tort cause of action).

[7]     <u>See, e.g.</u>, <u>Buss v. Superior Ct. of Los Angeles Cnty.</u>, 939 P.2d 766, 776 (Cal. 1997) (holding that insurer may seek reimbursement for defending claims that were not even potentially covered by its insurance policy) (citing cases); <u>Scottsdale Ins. Co. v. Sullivan Props., Inc.</u>, Civil No. 04-00550 HG-BMK, 2007 WL 2247795, *5-6 (D. Haw. Aug. 2, 2007) ("[T]he concepts applied in <u>Buss</u>, and in other court decisions allowing insurer to recoup defense costs, are well-established in Hawaii law."); <u>but see</u> <u>GGA, Inc. v. Kiewit Infrastructure W. Co.</u>, Civ. No. 18-00110 JMS-WRP, 2020 WL 369643, at *26 (D. Haw. Jan. 22, 2020) (acknowledging "the still apparently unresolved question of Hawaii law whether (or under what circumstances) an insurance company defending an insured under a reservation of rights would be entitled to seek reimbursement of defense costs").  I express no opinion on whether (or under what circumstances) Hawai'i would recognize a liability insurer's right to <u>Buss</u> reimbursement.

to tender the subpoena to National Union could not have been the legal cause of any damage to Pflueger; even if Noguchi had tendered, National Union would not have been obligated to advance defense costs.  On the other hand, if a court were to rule that National Union **would have been** obligated to advance defense costs, Pflueger would satisfy the legal cause element of its negligence claim against Noguchi.

Accordingly, I disagree that what National Union "would have done" in response to a timely tender of the subpoena is material to Noguchi's potential tort liability to Pflueger.  In my view, what is material is whether National Union would **actually** have been obligated — under the 2007-08 Policy — to advance Pflueger's defense costs if Noguchi had timely tendered the subpoena.  Cf. Thomas v. Kidani, 126 Hawaiʻi 125, 129, 267 P.3d 1230, 1234 (2011) ("The causation element of legal malpractice is often thought of as requiring a plaintiff to litigate a 'trial within a trial.'  That is, a plaintiff must show both the attorney's negligence and also what the outcome of the mishandled litigation would have been if it had been properly tried.") (cleaned up).

**(2)**  For Pflueger to prevail in its professional liability claim against Noguchi, Pflueger must prove a case within a case — that National Union would have been obligated to advance Pflueger's defense costs had Noguchi timely tendered the subpoena.  Accordingly, for Noguchi to sustain its burden as the summary judgment movant, it had to show that **even if** Pflueger's subpoena **had** been timely tendered to National Union, National Union would **not** have been obligated to advance defense costs under the 2007-08 Policy.  Only then could Noguchi's failure to tender the subpoena to National Union **not** have been a legal cause of damage to Pflueger.  See Ralston, 129 Hawaiʻi at 57, 292 P.3d at 1287 (explaining that where the party opposing a motion for summary judgment bears the burden of proof at trial, the moving party "may demonstrate that there is no genuine issue of material fact by either: (1) presenting evidence negating an element of

3

the non-movant's claim, or (2) demonstrating that the non-movant will be unable to carry [its] burden of proof at trial").

Noguchi's motion for summary judgment did not show that National Union could not have been obligated to advance Pflueger's defense costs under the 2007-08 Policy even if Noguchi had tendered the subpoena in May 2008. Thus, in my view Noguchi failed to meet its burden to show that it was entitled to judgment as a matter of law, and the circuit court erred by granting Noguchi's motion for summary judgment.

For the foregoing reasons I would vacate the summary judgment but, respectfully, on grounds other than those expressed by the majority.

/s/ Keith K. Hiraoka
Presiding Judge

4