**Electronically Filed
Supreme Court
SCWC-17-0000234
22-FEB-2023
08:16 AM
Dkt. 11 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

PFLUEGER, INC.,
Respondent/Plaintiff-Appellant,

vs.

AIU HOLDINGS, INC., NATIONAL UNION FIRE INSURANCE COMPANY OF
PITTSBURGH, PENNSYLVANIA,
Respondents/Defendants-Appellees,

and

NOGUCHI & ASSOCIATES, INC., Petitioner/Defendant-Appellee.


SCWC-17-0000234

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-17-0000234; CIV. NO. 09-1-1326)

FEBRUARY 22, 2023

NAKAYAMA, ACTING C.J., McKENNA, WILSON, AND EDDINS, JJ.,
AND CIRCUIT JUDGE KIM, IN PLACE OF RECKTENWALD, C.J., RECUSED

OPINION OF THE COURT BY NAKAYAMA, J.

This is an insurance broker malpractice case spanning approximately fourteen years. Respondent/Plaintiff-Appellant Pflueger, Inc. brought negligence and negligent malpractice claims against its insurance broker, Petitioner/Defendant-

Appellee Noguchi & Associates, Inc. (Noguchi). In the first chain of proceedings (Pflueger I), partial summary judgment was granted in favor of Pflueger and a jury found in favor of Pflueger. After the ICA remanded to the circuit court to include previously excluded testimony, the circuit court in the instant appeal granted summary judgment in favor of Noguchi, finding Noguchi's evidence negated the causation element of Pflueger's claim and Pflueger offered no evidence to the contrary. The ICA then disagreed, holding summary judgment for Noguchi was improper in a Summary Disposition Order, with a majority and concurring opinion.

Currently at issue is what Noguchi must demonstrate on summary judgment to negate the causation element of the negligence and negligent malpractice claims against it. Noguchi contends it need only show that Pflueger's insurer, National Union Fire Insurance Company of Pittsburgh, Pennsylvania (National Union), would have denied coverage even if Pflueger's grand jury subpoena matter were timely tendered in order to negate the causation element on summary judgment. By accepting this argument, both the circuit court and the ICA majority erred. We clarify that to negate the causation element on summary judgment, Noguchi instead would need to demonstrate that even if the grand jury subpoena matter were timely tendered to National Union, National Union would not have been legally

2

obligated to advance Pflueger's defense costs.  Accordingly, we vacate the ICA's October 5, 2022 Judgment on Appeal, and remand to the circuit court for proceedings consistent with this opinion.

## I.  BACKGROUND

### A.  Factual Background

Pflueger is an automotive retailer.  Noguchi procured for Pflueger a Directors and Officers liability insurance policy from National Union for policy periods covering September 27, 2007 to September 27, 2008, and September 27, 2008 to September 27, 2009.  The policy required that National Union "advance defense costs" for Pflueger against covered claims.[1]

On May 22, 2008, Pflueger and other entities were served with subpoenas related to a grand jury investigation.[2] Shortly thereafter, Pflueger's Chief Financial Officer Randall Kurata met with Noguchi's agents, Glenn Maruyama and Mike Bryan,

---

[1]     The 2007-08 Policy provided Directors, Officers and Private Company Liability Coverage as follows:

> This policy shall pay the Loss of [Pflueger] arising from a: (i) Claim first made against [Pflueger] . . . during the Policy Period . . . and reported to [National Union] pursuant to the terms of this policy for any Wrongful Act . . . . [National Union] shall, in accordance with Clause 4 of this Coverage Section, advance Defense Costs of such Claim prior to its final disposition.

The 2008-09 policy is worded exactly the same as above.

[2]     In the ensuing months, further subpoenas were also served on Pflueger and other entities.

allegedly to discuss the grand jury subpoenas. At the meeting, Noguchi's agents advised Pflueger that there was no claim under the insurance policies that National Union issued to Pflueger.[3] Noguchi did not forward a claim or the subpoenas to National Union or to National Union's "authorized representative" AIU Holdings, Inc. Pflueger hired multiple law firms to represent its interests in connection with the grand jury proceeding, incurring substantial legal fees.

In February 2009, Pflueger's attorney submitted a demand letter tendering Pflueger's defense to National Union. On April 29, 2009, AIU claim analyst Dennis Van Dina responded to Pflueger's attorney in two letters, one for each insurance policy, stating Pflueger's claim was not covered because the claim was untimely.[4] The letters then stated that even if timely

---

[3]    The parties dispute what was conveyed during the meeting. Before the circuit court in the first chain of proceedings (Pflueger I), Pflueger contended it notified Noguchi that it received federal grand jury subpoenas: Kurata showed Noguchi's agents a copy of all the subpoenas which were served on Kurata on May 22, 2008. Kurata then asked if there was coverage for the subpoenas, and Noguchi's agent replied there was no claim unless an indictment was handed down. In contrast, Noguchi contended Kurata never showed subpoenas or any documents, rather the meeting was about the IRS requesting information. One of Noguchi's agents testified he asked if anything like an indictment, subpoena, or anything more formal was handed down, and Kurata responded in the negative. The parties also disputed the basis for and the precise substance of the advice Noguchi's agents gave.

[4]    The letters stated:

> (1) Policy no. 052-68-49 has a Policy Period September 27, 2007 to September 27, 2008. Coverage B states that the Policy provides coverage for Claims first made against the Company or an Individual Insured during the Policy Period or Discovery Period (if applicable). The Grand Jury Subpoena was issued on May 22, 2008. Thus, the matter will

reported, the materials submitted did not constitute a claim.[5]

The letters stated "the language of the Policy requires that an

indictment, information or similar document is necessary for a

Claim as defined."  After Pflueger's counsel responded, Van Dina

reiterated AIU's position on May 13, 2009.

**B.    Pflueger I: Relevant Background**[6]

    **1.    Circuit Court Proceedings**

On June 10, 2009, Pflueger filed a complaint alleging

claims of declaratory relief, negligence, negligent

---

be deemed to have been made on May 22, 2008.  Clause 7 requires that a Claim must be both made and reported during the Policy Period or Discovery Period (if applicable) . . . . However, this matter was submitted to National Union on February 17, 2009; outside the applicable reporting periods found with Clause 7 Notice/Claim Reporting Provisions, and as amended by Endorsement #2. Therefore, coverage is precluded.

(2) "Policy no. 052-68-49 [sic] has a Policy Period September 27, 2008 to September 27, 2009.  Coverage B states that the Policy provides coverage for Claims first made against the Company or an Individual Insured during the Policy Period or Discovery Period (if applicable).  The Grand Jury Subpoena was issued on May 22, 2008.  Thus, the matter will be deemed to have been made on May 22, 2008; outside the Policy Period.  Clause 7 requires that a Claim must be both made and reported during the Policy Period or Discovery Period (if applicable) . . . . However, this Claim was made outside the Policy.  Therefore, coverage is precluded.

The second letter states the incorrect policy number.  The correct policy number is 01-277-00-32.

[5]    Van Dina noted "assuming this matter was both made and reported as per the requirements of the Policy, the materials submitted to National Union would not constitute a Claim."

[6]    The first chain of proceedings is referred to as Pflueger I, and the second chain of proceedings is referred to as Pflueger II.  Only the background pertinent to the instant issue will be briefly summarized.

misrepresentation, and breach of the duty of good faith and fair dealing against AIU/National Union and Noguchi. Pflueger brought negligence and negligent misrepresentation claims against Noguchi, alleging that Noguchi failed to tender the grand jury matter to AIU and National Union, and as a proximate result of Noguchi's negligence, Pflueger was denied coverage for legal fees and costs associated with responding to the grand jury subpoenas and for liability that Pflueger may incur as a result of the claims made against it in the grand jury proceedings. Pflueger also alleged that Noguchi made untrue representations that the grand jury matter was not covered under the policies, and that Pflueger reasonably relied on these representations in declining for a time to tender the grand jury matter directly to AIU and National Union; as a proximate result, AIU and National Union deemed Pflueger's eventual tender of the grand jury matter untimely and denied coverage.

Two AIU employees were deposed in 2011 and 2012: Senior Complex Claims Director Tiffany Ngeo and claims analyst Van Dina.

Ngeo was asked whether it was AIU's "position that there was no coverage afforded for the grand jury subpoenas, regardless of when they were reported to . . . AIU . . . ." Ngeo responded, "Well, we have two defenses. One of them for each of the policy [sic], is that it was either not made or

6

reported within the policy. And the other defense is that the grand jury subpoenas were not a claim per the policy." Ngeo was also asked, "Is it fair to say that [AIU's] position is that, first, there's no coverage for the grand jury subpoenas -- grand jury subpoenas under the policy; and second, even if there was coverage, they were not reported timely[?]" Ngeo responded, "[T]he grand jury subpoenas do not meet the definition of a claim under either policy."

Van Dina was asked, "Even if it had been made timely, it's not a covered claim; is that right?" Van Dina responded, "Right. Well, no. I'm sorry. Let me rephrase that. Not that -- it may not even constitute the definition of a claim." Van Dina was later asked, "Assuming this claim had been reported to where you found it to be timely, would there still have be [sic] coverage under the policy?" Van Dina responded, "I do not believe, based on what I reviewed today, that -- that a claim would have been made at that time. So I would say that coverage would not be available." Van Dina was asked again, "[R]egardless of whether the claim was reported in May of 2008 allegedly when the insured received or was served with the subpoena or in February of 2009 when it came across your desk, your position with respect to coverage would not change?" Van Dina answered, "No." Van Dina confirmed he believed the subpoenas were not claims under the policy.

Pflueger finalized a confidential settlement agreement with AIU and National Union between January - March 2013. The claims against Noguchi remained.

On May 15, 2013, Pflueger sought a partial summary judgment ruling that the IRS investigation and grand jury subpoenas constituted a covered claim under the insurance policies. On July 10, 2013, the circuit court granted in part and denied in part Pflueger's motion for partial summary judgment. The circuit court granted the motion:

> to the extent the Court finds that the Grand Jury Subpoenas, dated May 22, 2008 and directed at Pflueger, Inc. constitute a 'claim' as that term is defined under Insurance Policy No. 052-68-49 and Insurance Policy No. 01-277-00-32 issued by National Union . . . to Pflueger, Inc., as the named insured.

On July 22, 2013 a jury trial commenced.

During trial, the circuit court excluded Van Dina's and Ngeo's testimonies on hearsay grounds. Pflueger, Inc. v. Noguchi & Assocs., Inc., 136 Hawai'i 372, 362 P.3d 805, No. CAAP-14-0001032, 2015 WL 7723045 at *2-3 (App. Nov. 23, 2015) (Mem. Op.). The jury returned a special verdict form indicating that it found Noguchi liable for negligence and negligent misrepresentation. The jury found that Pflueger was thirty percent negligent, Noguchi was seventy percent negligent, and the amount of Pflueger's damages was $837,079.31. The circuit court entered an Amended Final Judgment on July 11, 2014.

8

### 2.    Appellate Proceedings

Noguchi appealed, and on January 7, 2016, the ICA entered a Judgment on Appeal vacating the circuit court's July 11, 2014 Amended Final Judgment, pursuant to the ICA's November 23, 2015 Memorandum Opinion, which held that the circuit court's decision to exclude Van Dina's and Ngeo's testimonies was error because their testimonies were essential to Noguchi's defense.  Pflueger, Inc. v. Noguchi & Assocs., Inc., 136 Hawai'i 372, 362 P.3d 805, No. CAAP-14-0001032, 2015 WL 7723045 at *5 (App. Nov. 23, 2015) (Mem. Op.).  This court denied Pflueger's application for writ of certiorari.  Pflueger Inc. v. Noguchi & Associates, Inc., No. SCWC-14-0001032, 2016 WL 830982 (Haw. Mar. 2, 2016).

## C.    **Pflueger II**

### 1.    Circuit Court Proceedings on Remand

On April 11, 2016, Noguchi moved for summary judgment on causation grounds, arguing that the testimony of witnesses "fails to put forth any evidence which might support a finding of proximate cause against Noguchi."  In opposition, Pflueger noted the circuit court already ruled that the subpoenas were a claim under Pflueger's insurance policies.  Pflueger argued the testimony of five witnesses demonstrates that Noguchi was a substantial factor in bringing about Pflueger's harm.

9

The circuit court granted Noguchi's motion for summary judgment on September 16, 2016.  The circuit court held that in light of Van Dina's and Ngeo's testimonies that AIU would have denied the claim regardless of timeliness, the burden shifted to Pflueger to demonstrate Noguchi's negligence was a legal cause of Pflueger's injuries, which Pflueger did not do.

Pflueger filed a motion for reconsideration on September 26, 2016, arguing that the causation issue had been repeatedly decided in Pflueger's favor in prior rulings, making the "law of the case" doctrine apply in favor of Pflueger. Noguchi argued Pflueger's law of the case argument was inapplicable, not controlling, and improper as it could have been made previously.  The circuit court denied the motion for reconsideration and issued a Final Judgment on March 14, 2017.

## 2.   ICA Proceedings

On March 24, 2017, Pflueger filed a notice of appeal. Pflueger argued (1) the circuit court erred in granting Noguchi's motion for summary judgment because questions of material fact existed, and (2) the circuit court abused its discretion in denying Pflueger's motion for reconsideration.

In response, Noguchi maintained the burden shifted to Pflueger to demonstrate a genuine issue of material fact, which Pflueger did not do, making the grant of summary judgment for Noguchi proper.  Noguchi contended the records before the court

10

were not sufficient to support a finding of causation. Noguchi also argued that Pflueger's causation argument should be rejected because Pflueger did not make the argument before the circuit court.

In its reply brief, Pflueger argued, among other things, that the bases of its arguments remained the same before the ICA as before the circuit court.

On August 31, 2022, the ICA issued a Summary Disposition Order, with a majority and concurring opinion, determining the circuit court erred in granting Noguchi's motion for summary judgment. Pflueger, Inc. v. Noguchi & Assocs., Inc., 151 Hawai'i 430, 516 P.3d 984, No. CAAP-17-0000234, 2022 WL 3928540 (App. Aug. 31, 2022) (SDO). The ICA vacated the circuit court's March 14, 2017 Final Judgment and remanded.

The ICA majority accepted Noguchi's premise that what AIU "would have done" had a timely tender been made was material. The majority agreed that "this testimony [of Van Dina and Ngeo] undermined the causation element," but found that "it was not subject to only one inference and, thus, did not completely dispose of the causation element." Therefore, the majority determined Noguchi did not meet its "burden of establishing that there was no genuine issue as to whether its conduct caused Pflueger's losses," making the issue one for the fact finder. The majority also noted that even if Noguchi had

11

met its burden, Pflueger submitted opposing evidence that raised genuine issues of material fact.

In a concurrence, Judge Hiraoka agreed that Noguchi did not satisfy its burden as a summary judgment movant, but did not agree that what AIU "'would have done' had Noguchi timely tendered Pflueger's subpoena" is material. The concurrence explained that had Noguchi timely tendered the subpoena:

> National Union would have had three options: "(1) advance Pflueger's defense costs to respond to the subpoena; (2) decline to advance defense costs; or (3) advance defense costs under a reservation of rights. National Union's denial of a tender would not end the story; Pflueger could have filed a declaratory relief action, with or without a claim for bad faith. If National Union agreed to advance defense costs under a reservation of rights, National Union could itself have filed a declaratory relief action, with or without a claim for reimbursement of defense costs advanced.
>
> If a court were to rule that National Union was not obligated to advance Pflueger's defense costs, Noguchi's failure to tender the subpoena to National Union could not have been the legal cause of any damage to Pflueger; even if Noguchi had tendered, National Union would not have been obligated to advance defense costs. On the other hand, if a court were to rule that National Union would have been obligated to advance defense costs, Pflueger would satisfy the legal cause element of its negligence claim against Noguchi.

Thus, the concurrence determined that whether National Union would have actually been obligated to advance Pflueger's defense costs if Noguchi timely tendered the subpoena was material, not what National Union would have done in response to a timely tender of the subpoena. Therefore, to sustain its burden as the summary judgment movant, Noguchi had to show that even if Pflueger's subpoena had been timely tendered, National

12

Union would not have been obligated to advance defense costs. "Only then could Noguchi's failure to tender the subpoena to National Union <u>not</u> have been a legal cause of damage to Pflueger." Consequently, the concurrence concluded that Noguchi did not meet its burden and the circuit court erred by granting summary judgment.

**D.    Application for Writ of Certiorari**

On November 30, 2022, Noguchi timely filed an application for writ of certiorari, asking this court to vacate the ICA judgment and reinstate the circuit court's grant of summary judgment in favor of Noguchi. Noguchi raises three questions:

(1)    Whether the ICA grievously erred in holding Noguchi did not meet its initial burden on summary judgment, violating law of the case and ignoring requirements for causation in cases involving insurance agent malpractice.

(2)    Whether the ICA grievously erred in finding that a question of fact existed as to what AIU would have done with a timely tender in spite of the fact that nothing contradicted its representatives' unambiguous testimony that they would have denied it.

(3)    Whether the ICA grievously erred in reversing a grant of summary judgment based on arguments and evidence that were not presented to the trial court (or even in Pflueger's brief on appeal).

**II.    STANDARD OF REVIEW**

**A.    Summary Judgment**

On appeal, the grant or denial of summary judgment is reviewed de novo. Furthermore,

[S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

13

is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and inferences drawn therefrom in the light most favorable to the party opposing the motion.

First Ins. Co. of Haw. v. A & B Props., Inc., 126 Hawai'i 406, 413, 271 P.3d 1165, 1172 (2012) (citations omitted).

The burdens of the moving and non-moving parties on summary judgment are as follows:

The burden is on the party moving for summary judgment (moving party) to show the absence of any genuine issue as to all material facts, which, under applicable principles of substantive law, entitles the moving party to judgment as a matter of law. This burden has two components. First, the moving party has the burden of producing support for its claim that: (1) no genuine issue of material fact exists with respect to the essential elements of the claim or defense which the motion seeks to establish or which the motion questions; and (2) based on the undisputed facts, it is entitled to summary judgment as a matter of law. Only when the moving party satisfies its initial burden of production does the burden shift to the non-moving party to respond to the motion for summary judgment and demonstrate specific facts, as opposed to general allegations, that present a genuine issue worthy of trial. Second, the moving party bears the ultimate burden of persuasion. This burden always remains with the moving party and requires the moving party to convince the court that no genuine issue of material fact exists and that the moving part is entitled to summary judgment as a matter of law.

French v. Hawai'i Pizza Hut, Inc., 105 Hawai'i 462, 470, 99 P.3d 1046, 1054 (2004) (quoting GECC Fin. Corp. v. Jaffarian, 79 Hawai'i 516, 521, 904 P.2d 530, 535 (App. 1995)) (emphasis omitted).

14

## III.  DISCUSSION

On summary judgment, Noguchi cannot negate the causation element by demonstrating that National Union would have denied coverage even if Pflueger's grand jury subpoena matter were timely tendered.  We believe Judge Hiraoka's concurrence provides a cogent analysis and a path forward in analyzing this matter.

This court has explained:

> [W]here the non-movant bears the burden of proof at trial, a movant may demonstrate that there is no genuine issue of material fact by either: (1) presenting evidence negating an element of the non-movant's claim, or (2) demonstrating that the non-movant will be unable to carry his or her burden of proof at trial.

Ralston v. Yim, 129 Hawai'i 46, 57, 292 P.3d 1276, 1287 (2013).

Noguchi attempted to demonstrate that the causation element of Pflueger's claims was negated by the testimony of Van Dina and Ngeo, which purportedly shows that no causal connection existed between Noguchi's negligence and Pflueger's injury because National Union would have denied coverage regardless of the claim's timeliness.[7], [8]

---

[7]    Noguchi indirectly or impliedly made this second argument before the circuit court, and made the argument more clearly before the ICA.

[8]    Noguchi also argued before the circuit court that Pflueger would not be able to carry its burden of proof at trial due to lack of evidence, specifically that "Pflueger has presented no evidence that Noguchi's conduct was a contributing factor in AIUH's decision to deny coverage to Pflueger." Noguchi appears to have dropped this argument before the ICA and on certiorari.  As such, this court will not address it.

15

Noguchi misunderstands what it must demonstrate to negate the causation element of Pflueger's claims.  To prove causation, Pflueger must prove a case within a case, namely that National Union would be obligated to advance Pflueger's defense costs if Pflueger's grand jury subpoena matter were timely tendered to National Union.  Pflueger needs to demonstrate that Noguchi was a substantial factor in causing Pflueger's harm in order to establish causation.  See Mitchell v. Branch, 45 Haw. 128, 132, 363 P.2d 969, 973 (1961); see also Knodle v. Waikiki Gateway Hotel, 69 Haw. 376, 390, 742 P.2d 377, 386 (1987).  Noguchi can only be a substantial factor in causing Pflueger's harm if National Union were obligated to advance Pflueger's defense costs if the grand jury subpoena matter were timely tendered.  If National Union was not obligated to advance Pflueger's defense costs, Pflueger could not have been harmed by Noguchi's failure to tender the grand jury subpoena matter or Noguchi's role in the untimely tender.  Therefore, Noguchi cannot be a legal cause of Pflueger's harm if National Union were not legally obligated to advance Pflueger's defense costs. See Thomas v. Kidani, 126 Hawai'i 125, 129, 267 P.3d 1230, 1234 (2011) ("The causation element of legal malpractice is often thought of as requiring a plaintiff to litigate a 'trial within a trial.'  That is, a plaintiff must show 'both the attorney's negligence and also what the outcome of the mishandled

16

litigation would have been if it had been properly tried.'")
(citation omitted); see also Gibbons v. Ludlow, 304 P.3d 239,
244-45 (Colo. 2013) (noting the "case within a case" framework
for analyzing legal malpractice is apt for analyzing broker
malpractice, and applying the standard that "plaintiff must
prove causation by showing that the claim underlying the
malpractice action would have been successful 'but for' the
attorney's negligence" to the broker context).

Because Pflueger must demonstrate that National Union
would be obligated to advance defense costs if the grand jury
subpoena matter were timely tendered to establish causation,
Noguchi must demonstrate that National Union would not be
obligated to advance Pflueger's defense costs if the grand jury
subpoena matter were timely tendered in order to negate
causation.  See Hawaiʻi Pizza Hut, Inc., 105 Hawaiʻi at 470-471,
99 P.3d at 1054-55 (rejecting Pizza Hut's argument that
plaintiff did not meet her burden of establishing she was
disabled by not being able to lift twenty-five pounds because
she did not produce evidence the average person could lift more
than twenty-five pounds and concluding it was Pizza Hut's burden
as the summary judgment movant to produce admissible evidence
that the average person in the population cannot lift more than
twenty-five pounds).  Only then would Noguchi have demonstrated

17

that its role in the untimely tender was not a legal cause of Pflueger's harm.

Instead, Noguchi offered the testimonies of Ngeo and Van Dina, which both suggested that National Union would not have considered the subpoenas to be a covered claim if timely tendered, in an attempt to negate the causation element of Pflueger's claims. However, this testimony does not negate causation. As Judge Hiraoka's concurrence noted, if National Union denied coverage after the timely tender of Pflueger's grand jury subpoena matter, Pflueger could then file a declaratory relief action, with or without a claim for bad faith. See Hawaiʻi Revised Statutes § 632-1 (2016) (providing that courts may grant declaratory relief where an actual controversy exists between parties); Best Place, Inc. v. Penn Am. Ins. Co., 82 Hawaiʻi 120, 132, 920 P.2d 334, 346 (1996) (holding that "there is a legal duty, implied in a first- and third-party insurance contract, that the insurer must act in good faith in dealing with its insured, and a breach of that duty of good faith gives rise to an independent tort cause of action."); see also Steven Plitt, et al., Couch on Insurance § 202:4 (3d ed. Nov. 2022) ("[I]f the insurer refuses to defend an action against the insured based on a claim actually within the coverage of the policy, on the ground that it is outside policy coverage, such a refusal . . . constitutes an unjustified

18

refusal and renders the insurer liable for breach of its contract.  The failure to provide a defense when the insurer is obligated to do so is sufficient to sustain a cause of action in tort in addition to one for breach of contract.").  National Union's disclaimer of coverage is not determinative of Pflueger's legal rights or legally cognizable harm – only a court's ruling on the matter is.[9]

Therefore, the circuit court's grant of summary judgment in favor of Noguchi on the grounds that Van Dina's and Ngeo's testimonies negated the causation element was incorrect. The ICA majority's acceptance of Noguchi's causation argument was similarly incorrect.

In light of our foregoing analysis, Noguchi's remaining arguments on certiorari do not need to be addressed.

## IV.  CONCLUSION

As the summary judgment movant, Noguchi cannot refute the causation element by demonstrating National Union would have denied coverage if Pflueger's grand jury subpoena matter were

---

[9]     Indeed, Noguchi's argument leads to an absurd result.  The insurer would determine whether the insured had a legally cognizable harm sufficient for causation, and would effectively insulate insurance brokers from liability by stating more than one ground for the denial of coverage (which insurers may be incentivized to do).  See generally, Steven Plitt, et al., Couch on Insurance § 198:52-55 (3d ed. Nov. 2022) (discussing waiver and estoppel of an insurer's defenses based on the insurer's disclaimer of coverage); see also Van Dina's testimony stating: "generally you try and be as thorough as you can.  Not to say that you throw in the kitchen sink, but – but you try and – really anything that's going to be applicable is applicable."

timely tendered to National Union.  Rather, Noguchi had to demonstrate that even if Pflueger's grand jury subpoena matter were timely tendered, National Union would not have been legally obligated to advance Pflueger's defense costs.  Because the circuit court and the ICA majority incorrectly analyzed Noguchi's burden regarding the causation element, we vacate the ICA's October 5, 2022 Judgment on Appeal, and remand to the circuit court for proceedings consistent with this opinion.

Christopher Shea Goodwin
for petitioner
Noguchi & Associates, Inc.

Lyle S. Hosoda,
Kourtney H. Wong and
Spencer J. Lau for
respondent Pflueger, Inc.

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Michael D. Wilson

/s/ Todd W. Eddins

/s/ Robert D.S. Kim

